STATE of Maine

v.

Patricia DOUGHTY.

Supreme Judicial Court of Maine.

Argued Jan. 9, 1989.
Decided March 7, 1989.

Mary Tousignant, Dist. Atty., Anne H. Jordan (orally), Asst. Dist. Atty., Alfred, for plaintiff.

James M. Dineen (orally), Kittery, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

McKUSICK, Chief Justice.

After a jury trial in the Superior Court (York County; *Cole, J.*), Patricia Doughty was convicted of operating a motor vehicle while under the influence of intoxicating liquor (OUI), 29 M.R.S.A. § 1312–B (Pamph.1988). Doughty raises three issues on appeal, contending: 1) that the presiding justice erroneously admitted into evidence a privileged physician-patient communication; 2) that evidence of her refusal to submit to a blood-alcohol test, throughout the time she was in police custody, was rendered inadmissible by the subsequent hospital analysis of her blood-alcohol content for diagnostic purposes (the results of which had been suppressed from evidence); and 3) that the prosecutor in closing argument summarized the testimony in a misleading and inflammatory manner and prejudicially used impeachment evidence for substantive purposes. We find no error.

According to Doughty's testimony, she and her husband had stopped for dinner at a restaurant in Ogunquit after a Sunday drive up the coast from their Kittery home. While waiting to be served, Doughty drank some "mimosas," a mixture of orange juice and champagne. Then, deciding the service was too slow, they left without eating and checked into a nearby motel. Doughty, who suffers from diabetes, then drove off alone to fetch some take-out food. That much of her testimony is undisputed. Next, according to Doughty, she felt an insulin reaction coming on while en route to get the food, pulled onto a side road, and stopped her car. Only then did she notice that a police cruiser had pulled up behind her.

The owner of the motel testified that Doughty was noticeably intoxicated when she checked in and that she drove out of the parking lot in a highly erratic manner. The motel owner called to warn the police, giving them a description of Doughty's car.

According to the arresting officer's testimony, he encountered Doughty driving head-on towards him in the wrong lane. It was after dark and he was not yet aware that the car met the description he had just received of the OUI suspect in the neighborhood. After taking the necessary evasive action, he turned around to follow, and the car pulled off and stopped. The driver, he said, was severely disoriented, with a flushed face, bloodshot eyes, and a very strong odor of alcohol on her breath. She told him she had consumed two mimosas and asked to be driven back to her motel because she had had too much to drink to be driving. Her performance on field sobriety tests was not satisfactory.

Doughty consented to return to the station. After she again displayed difficulty in walking a straight line, the officer asked her if she would voluntarily take a breath test. When she declined, he placed her under arrest and informed her of her duty to submit to a breath test and of the consequences of failure to submit. He followed the procedure specified in 29 M.R.S.A. § 1312(1) (Pamph.1988) and gave her an acknowledgment form to sign. She again refused to be tested, and soon began having chest pains. She was taken to York Hospital for observation, spent the night there, and was discharged the next morning. In the course of her treatment, she had blood drawn and analyzed; the laboratory results included a blood-alcohol reading of 0.21%. The hospital records also show that she told the attending physician when asked about her alcohol consumption that she had drunk four mimosas.

At trial, she testified on direct examination that she had had only two mimosas. When she reaffirmed that figure on cross-examination, the State offered as impeachment evidence a certified copy of the hospital record with the text of her statement to the physician. On appeal Doughty renews her objection that the record is a privileged physician-patient communication under M.R.Evid. 503.[1]

---

**1.** Rule 503, defining the physician and psychotherapist-patient privilege, provides in pertinent part:

    **(a) Definitions.**

## I.

■ Doughty's statement was clearly a confidential communication to her doctor, and the State has not contested this point. Were there no applicable exception to the "General Rule of Privilege," M.R.Evid. 503(b), Doughty would have the right to have the statement excluded from evidence.[2] Rule 503(e)(3), however, provides:

There is no privilege under this rule as to communications relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which the condition of the patient is an element of the claim or defense of the patient....

Doughty affirmed on direct examination that she did not "feel any impairment, even to the slightest degree, of what [she] had had to drink." She testified that any problems she may have had with her driving or her field sobriety tests were the result of unrelated medical conditions, diabetes and a back injury, not the two mimosas she said she had drunk. By so doing, she placed her physical condition in issue as an element of her defense and thereby took her level of alcohol consumption outside the scope of the privilege. To preserve the confidentiality of a statement to a physician pertaining to a medical condition, the patient must avoid raising that condition as an issue in her defense at trial. *See Leslie v. Brames,* 682 F.Supp. 608, 609 n. 1 (D.Me. 1988) (applying M.R.Evid. 503(e)(3)).

## II.

■ Next, Doughty contends that it was error for the court to admit evidence of her refusal to submit to an alcohol test while in police custody. She argues that the blood-alcohol test taken in the hospital for diagnostic purposes, some two to four hours after she was stopped, fulfilled her statutory "duty to submit to a test to determine h[er] blood-alcohol level by analysis of h[er] blood or breath," 29 M.R.S.A. § 1312 (Pamph.1988).[3] The phrase "submit to a

---

(4) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient ... or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment....

**(b) General Rule of Privilege.** A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment....

M.R.Evid. 503(a)(4), 503(b).

2. Before the Maine Rules of Evidence were adopted, there was no such unqualified privilege, and any claim of confidentiality could be overridden "when a court[,] in the exercise of sound discretion, deems ... disclosure necessary to the proper administration of justice." 32 M.R.S.A. § 3295 (Pamph. 1973), *repealed by* P.L. 1977, ch. 564, § 123; *see* M.R.Evid. 503 advisers' note, *reprinted in* Field & Murray, *Maine Evidence* § 503, at 161 (2d ed. 1987).

3. The implied consent statute provides more fully:

Any person who operates or attempts to operate a motor vehicle within this State shall have the duty to submit to a test to determine his blood-alcohol level by analysis of his blood or breath, if there is probable cause to believe he has operated or attempted to operate a motor vehicle while under the influence of intoxicating liquor....

**1. Prerequisites to tests.** Before any test specified is given, the law enforcement officer shall inform the person as to whom there is probable cause that, if he fails to comply with the duty to submit to and complete a test ... his license ... will be suspended.... The officer should also inform the person that the failure to comply with the duty ... shall be admissible in evidence against him at any trial for operating under the influence of intoxicating liquor.

**8. Evidence.** The percentage by weight of alcohol in the defendant's blood at the time alleged, as shown by the chemical analysis ... shall be admissible in evidence.

The failure of a person to comply with the duty required by this section to submit to a blood-alcohol test shall be admissible in evidence on the issue of whether that person was under the influence of intoxicating liquor. If the law enforcement officer having probable cause to believe that the person operated or attempted to operate a motor vehicle under the influence of intoxicating liquor fails to give either of the warnings required under subsection 1, the failure of the person to com-

test" in the introductory paragraph of section 1312, however, is clarified and amplified in the eleven subsections that follow, leaving no room for doubt that the motorist's duty is to "submit to a chemical test or tests at the request of a law enforcement officer," 29 M.R.S.A. § 1312(4) (1978), for investigatory purposes. At no time did Doughty do this. She never consented to the State's use of the hospital laboratory results. Indeed, when Doughty learned that the State had obtained those results, she sought and obtained their suppression.[4]

The manifest purpose of the implied consent law is to provide reliable evidence to aid in determining whether a person suspected of operating under the influence has in fact committed that crime against public safety. The aim is the prompt resolution of the key factual question at a time when meaningful objective information is available through testing under controlled conditions. If that aim is frustrated by the defendant's refusal to submit to testing when the officer so requests, the statute expressly authorizes the factfinder to consider the logical implication of that refusal. 29 M.R.S.A. § 1312(8).

### III.

■ Finally, Doughty contends that the State's closing argument was prejudicial in two ways: first, that it contained inflammatory and inaccurate paraphrases of the testimony; second, that it used the hospital record for the truth of her "four mimosa" statement rather than merely for impeachment of her "two mimosa" testimony. On the first point we state the obvious, that an attorney making a closing argument is not restricted to the difficult if not impossible task of providing verbatim renditions of all testimony alluded to. In closing argument, counsel may comment on testimony and other evidence as long as they stay within the bounds of fairness. *Miller v. Szelenyi*, 546 A.2d 1013, 1018 (Me.1988); *Young v.*

*Carignan*, 152 Me. 332, 338, 129 A.2d 216, 219 (1957). In this case, whatever potential for prejudice there may have been in such prosecutorial remarks as "on the look out for a reported drunk driver" was fully remedied when defense counsel carefully explained to the jury that the dispatcher actually warned the arresting officer only of a "possible OUI," and provided similar corrections for every other arguable inconsistency between testimony and closing argument.

■ Neither was there any error in the prosecutor's reference in closing argument to Doughty's admission to her doctor that she had consumed four mimosas. Even if the prosecutor's reference to the hospital record did go beyond the limited purpose of impeachment, there was no impropriety because the use of the evidence was not restricted to that purpose. No limiting instruction was ever requested under M.R. Evid. 105, none was given, and none was in order. Rule 503(e)(3) in no way puts any limitation on the exception to the physician-patient privilege that arises when the patient has herself put her physical condition in issue. That rule simply states: "There is no privilege ..." in that situation. Doughty's statement to the doctor, admissible under M.R.Evid. 801(d)(2) as a party's admission, went into evidence for all purposes.

The entry is:

Judgment affirmed.

All concurring.

■

---

ply with the duty to submit to a blood-alcohol test shall not be admissible....

29 M.R.S.A. § 1312 (Pamph.1988). Doughty does not contest the existence of probable cause or the officer's compliance with the warning requirement.

4. The District Court (Kittery; *Janelle, J.*) suppressed the blood-alcohol reading with the State's consent pursuant to an agreement under which Doughty dropped her effort to suppress "any self-incriminating statements ... including the recitation of the alphabet."