**STATE of Maine**

v.

**Jon STEEN.**

Supreme Judicial Court of Maine.

Argued Jan. 13, 1993.
Decided April 6, 1993.

Stephanie Anderson, Dist. Atty., Jane Elizabeth Lee (orally), Asst. Dist. Atty., Portland, for plaintiff.

Gene R. Libby (orally), Verrill & Dana, Kennebunk, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

COLLINS, Justice.

Jon Steen appeals from a judgment entered on his conviction of gross sexual assault, 17–A M.R.S.A. § 253(1)(A) (Supp. 1991),[1] following a jury trial in the Superior

---

1. 17–A M.R.S.A. § 253(1)(A). reads:

   1. A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:

   A. The other person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E; ...

At the time of the alleged conduct, 17–A M.R.S.A. § 251(1)(E) read:

Court (Cumberland County, *Brodrick, J.*). Steen contends that: (1) the prosecutor's misconduct at trial denied him a fair trial; (2) the trial court violated his right to confrontation by prohibiting his inquiry, on *voir dire* and cross-examination, into a prior allegation of rape made by the complainant; and (3) the trial court erroneously instructed the jury. Although we reject Steen's latter two contentions, we agree that the prosecutor's conduct in this case requires us to vacate his conviction.

On April 11, 1991, the complainant attended a party at the Tau Kappa Epsilon (TKE) fraternity at the University of Southern Maine's Gorham campus. The complainant testified that she was drunk when she arrived at the party. At the party, the complainant met Jon Steen. She and Steen danced together and talked for some time. The complainant testified, however, that when she went to the bathroom Steen sexually assaulted her. Steen admits engaging in vaginal intercourse with the complainant but denies that it was nonconsensual. The complainant suffered a laceration in the base of her vagina. Steen's expert testified that, because the tear occurred in an area recently subjected to surgery, the tear could have been the result of consensual intercourse.

The detective who investigated the case, Detective Drown, testified that Steen made several inculpatory remarks during his initial interview. Although the detective did not record this conversation with Steen, Drown testified that he wrote it down from memory. Steen denied making the inculpatory statements to Drown.

Steen appeals from the judgment entered on the jury's conviction.

## I.

### Prosecutorial Misconduct

During the State's cross-examination of Steen, the prosecutor asked Steen 24 questions that required him to give his opinion as to whether other witnesses were lying.[2] Steen objected five times to this type of questioning but the trial court sustained only one objection. The State contends that Steen, through his direct examination, accused Detective Drown of lying and this opened the door to the State's cross-examination. The record does not support the State's contention. During direct examination, Steen denied making the inculpatory statements testified to by Drown. He did not accuse Drown and other witnesses of lying until asked to do so by the State on cross-examination.

■ This court has consistently held that "while a prosecutor 'may strike hard blows, [she] is not at liberty to strike foul ones. It is as much [her] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'" *State v. Collin*, 441 A.2d 693, 697 (Me.1982) (*quoting Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). As a representative of an impartial sovereign, the prosecutor is under a duty to ensure that a criminal defendant gets a fair trial and this duty must far outweigh any desires to achieve a record of convictions. *Id.*

■ As we have previously stated, "Cross-examination that tries to push a defendant into saying other witnesses lied is *impermissible.*" *State v. Commeau*, 409 A.2d 247, 249 n. 1 (Me.1979) (emphasis added) (*citing People v. Graves*, 61 Ill.App.3d 732, 18 Ill.Dec. 829, 839–40, 378 N.E.2d

---

'Compulsion' means physical force, a threat of physical force or a combination thereof which makes a person unable to physically repel the actor or which produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or upon another human being.

**2.** For example, the prosecutor asked the following questions:

Q. I want you to tell me which statements you say really happened and which statements you're saying Detective Drown is *lying* about.
Q. So Detective Drown is *making this up?*
Q. She [the complainant] is *lying* about that?
Q. Well, are you saying that everything she said to this jury is a *lie?*
Q. And everyone else who testified in this courtroom all week long was *lying?*
(emphasis added).

293, 303–04 (1978)). "Determining what credence to give to the various witnesses is a matter within the *exclusive province* of the jury." *State v. Crocker*, 435 A.2d 58, 77 (Me.1981) (*citing State v. Doughty*, 399 A.2d 1319, 1326 (Me.1979)) (emphasis added). Questions that force a witness to give his opinion on whether another witness is lying invade this province and are impermissible.

◼ We do not mean to suggest that isolated questioning of this sort would *per se* require a new trial. "Prompt and appropriate curative instructions, under some circumstances, may well alleviate the damage caused by such conduct." *State v. Reilly*, 446 A.2d 1125, 1129 (Me.1982). The trial court in the case at bar, however, sustained only one of Steen's five objections to the State's cross-examination.

Steen also challenges statements made by the prosecutor that suggest she thought Steen and his medical expert were lying. For example, the prosecutor asked Steen, "So you *made this one up* on your own?" and "So now we have three versions ... *It is hard for you to keep this all straight, isn't it?*" (Emphasis added). Steen objected to these questions. In her closing argument, the prosecutor also stated:

> Now at trial [Steen] has got a theory for how [the vaginal tear suffered by the complainant] occurred. And what does he do to advance his theory? He calls Dr. Piver, a medical doctor, no less, flown up specially all the way from Maryland just to testify for Jon Steen. And Dr. Piver sits on this witness stand and he says that that tear, well, that tear wasn't big enough for rape, that must have been consensual.... *I suggest to you, ladies and gentlemen, that his opinion is based on $2,500, the money the defendant paid him for his testimony.*

(Emphasis added). Steen objected to this statement but the objection was overruled.

◼ Although it is proper for the State to point out inconsistencies in a defendant's statement, *see State v. Kane*, 432 A.2d 442,

444 (Me.1981), it is impermissible for a prosecutor to assert that the defendant lied on the stand. *See State v. Smith*, 456 A.2d 16, 17 (Me.1983). The prosecutor through her cross-examination of Steen and her statements in closing remarks clearly suggested to the jury that she thought these witnesses were lying.

◼ Since we cannot find it highly probable that the jury's determination of Steen's guilt was unaffected by the prosecutor's comments, *see State v. True*, 438 A.2d 460, 467 (Me.1981), we vacate his conviction. Although we vacate Steen's conviction based on the prosecutor's conduct, we address the other issues raised by Steen for "the guidance of the court and counsel in the event of a new trial." *Reilly*, 446 A.2d at 1125.

## II.

### *Prior Allegations of Rape by the Complainant*

◼ Steen argues that the trial court violated his Sixth Amendment right to confront his accuser when it precluded inquiry into a "prior rape allegation" on *voir dire* and on cross-examination of the complainant. In his offer of proof, Steen stated that John Doe[3] had consensual sexual intercourse with the complainant after a party on campus which both attended. According to Steen's offer of proof, the complainant allegedly told an acquaintance, Jane Roe, that John Doe had raped her. The complainant never reported this incident to the authorities. The State responded that the complainant denied ever speaking with Jane Roe about the incident with Doe and further denied that the sexual intercourse with Doe was consensual. The trial court excluded any mention of the Doe incident because facts were "very much in dispute," and would lead to trying two cases of rape." The trial court continued:

> [T]he minimal probative value on the issue of the victim's credibility is clearly outweighed by the confusion this prior incident would introduce into this case....

---

**3.** John Doe and Jane Roe are fictitious names.

A trial court enjoys broad discretion in determining the scope of cross-examination. *State v. White,* 456 A.2d 13, 15 (Me. 1983). We will uphold the trial court's exercise of that discretion unless it interferes with a defendant's right to a fair trial. *Id.* In the case at bar, Steen's offer of proof established only an allegation that the complainant made a prior false accusation of sexual assault. The complainant never made any formal complaint against Doe and denied making any allegation of rape to Jane Roe. Furthermore, Steen never provided affidavits of Doe or Roe despite the trial court's providing him an opportunity to do so. The court properly engaged in the balancing test required by M.R.Evid. 403,[4] and its determination that the probative value of his evidence was outweighed by the possibility of jury confusion and delay does not constitute an abuse of discretion.

### III.

### *Jury Instructions*

■ Steen challenges the trial court's refusal to charge the jury with his proposed instruction defining "reasonable fear"[5] which read:

> Any evidence that would tend to establish that [the complainant] actually felt no fear or that fear she did feel was not reasonable under the circumstances could be taken by you as negating the existence of any compulsion operating on her.

In its instruction on reasonable fear, the trial court stated:

> [T]he State must prove two facts: first, that the alleged victim did in fact fear that death or serious bodily injury or kidnapping would occur; and second,

that the alleged victim's fear was reasonable under the circumstances.

We find no error in this instruction or in the court's refusing to adopt Steen's proposed instruction. Steen also challenges the trial court's reinstruction on the issue of compulsion. This issue, however, merits no discussion.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

**4.** Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**5.** The statute in effect at the time of the conduct at issue on the issue of compulsion read:

"Compulsion" means physical force, a threat of physical force or a combination thereof which makes a person unable to physically repel the actor or which produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be immediately inflicted upon that person or upon another human being.
17–A M.R.S.A. § 251(1)(E) (amended by 1991 Me.Laws, Ch. 457 effective October 9, 1991).