**STATE of Maine,**

v.

**Anthony CASELLA.**

Supreme Judicial Court of Maine.

Argued May 13, 1993.

Decided Aug. 9, 1993.

William R. Stokes (orally), Leanne Robbin, Asst. Attys. Gen., Augusta, for plaintiff.

Stuart W. Tisdale, Jr. (orally), Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

DANA, Justice.

Anthony Casella appeals from a judgment convicting him of four counts of theft by unauthorized taking, 17–A M.R.S.A. § 353(1) (1983), and one count of witness tampering, 17–A M.R.S.A. § 454(1)(A)(2) (Supp.1992), entered after a jury trial in the Superior Court (Cumberland County, *Perkins, J.*). Casella contends that he was deprived of a fair trial because the State repeatedly referred to him as a "liar" during its closing arguments at the trial. We agree and vacate the judgments.

Through his business, Case Equipment, Inc., Casella sold the "Sublicolor System," a machine that transposed images onto T-shirts, baseball caps, and coffee mugs. The charges in question are based on four separate transactions in which Casella, *inter alia*, refused to return a down payment as promised; promised to sell a machine that Case Equipment neither manufactured nor sold; and promised to hold a customer's check while the customer contemplated purchasing a machine but promptly negotiated the check despite his promise.

During his closing argument, the prosecutor, not less than forty-one times, asserted his opinion that Casella had lied. On at least seven of those occasions, the prosecutor's view related to Casella's in-court testimony. For example, the prosecutor stated:

You were never supposed to hear him explain his lies. He didn't count on sitting in that [witness] chair.

. . . .

... [T]hat's how you tell that Anthony Casella meant to steal because remember what I said he'll say anything.... He'll tell any lie that has to be told to get and keep the money. And that includes lying

to his attorneys and lying to you on that witness stand.

. . . .

Defendant testified, ladies and gentlemen, about a computer portrait system that he said he ordered for Helen Piantedosi in 1988 from Kokomo, Indiana.... [T]hat story was hogwash. Anthony Casella made it up....

. . . .

... Anthony Casella and Al Daniel couldn't keep their lies straight....

. . . .

Remember what I told you. He will tell any lie, any lie to get what he wants and that includes lying to you....

. . . .

He is truly an accomplished liar, ladies and gentlemen. He is [a] master salesman. And he is giving you the sales pitch of his life. And you are the consumers. He thinks that he can sell you his pack of lies. He thinks he can talk his way out of this. He thinks he can sell you a bill of goods. Don't buy what Anthony Casella is trying to sell you. Don't be his next victim. Don't let him lie to you and get away with it.

. . . .

Don't let him walk out of this courtroom thinking he could con you. You have watched him and you have listened to him and you have taken the measure of Anthony Casella. Now, it's time for you to do your duty and convict him of the crimes he committed. Thank you.

Immediately following the prosecutor's closing argument to the jury, defense counsel moved for a mistrial. The trial court denied the motion. We review the court's decision to deny the motion for mistrial only for an abuse of discretion. *State v. Harnish,* 560 A.2d 5, 9 (Me.1989).

■ On appeal, the State acknowledges that "the prosecutor attacked Casella's credibility by suggesting that Casella lied to the jury while on the witness stand" but argues that his "characterization of the defendant's testimony as 'lies' ... was not an expression of personal opinion." We disagree. The prosecutor may well believe in the correctness of his opinion, and his belief may even be well founded but it is an opinion nonetheless.

■ We have repeatedly held that it is improper for a prosecutor to express an opinion on the credibility of a defendant. *See, e.g., State v. Pendexter,* 495 A.2d 1241, 1241 (Me.1985) ("Our rules and opinions make clear that it is improper for a prosecutor to express his personal opinion on the credibility of a defendant or of a witness."); *State v. Smith,* 456 A.2d 16, 17 (Me.1983) ("Although the prosecutor may properly attack defendant's credibility by analyzing the evidence and highlighting absurdities or discrepancies in defendant's testimony, and may present his analysis in summation with vigor and zeal, he may not properly convey to the jury his personal opinion that a defendant is lying."); and *State v. Reilly,* 446 A.2d 1125, 1129 (Me.1982) (finding the prosecutor's comment that defense counsel "knew [the defendant] was a liar ... particularly damaging"); *see also* M.Bar R. 3.7(e)(2)(v) ("In appearing in a professional capacity before a tribunal, a lawyer shall not ... [a]ssert a personal opinion as to the ... credibility of a witness....."). We have stated the reason for this rule as follows:

> The policies underlying this proscription go to the heart of a fair trial. The prosecutor is cloaked with the authority of the [State]; he stands before the jury as the community's representative. His remarks are those, not simply of an advocate, but rather of a [State] official duty-bound to see that justice is done.
>
> . . . .
>
> ... [T]he representative of the government approaches the jury with the inevitable asset of tremendous credibility—but that personal credibility is one weapon he must not use.

*State v. Smith,* 456 A.2d at 18 (citations omitted).

We have recently reiterated this rule. *See State v. Steen,* 623 A.2d 146, 149 (Me.1993). In *Steen,* we vacated a gross sexual assault conviction on the ground that the prosecutor impermissibly asserted to the jury her per-

sonal belief that the defendant and other witnesses were lying,[1] stating that:

> Although it is proper for the State to point out inconsistencies in a defendant's statement, it is impermissible for a prosecutor to assert that the defendant lied on the stand. The prosecutor through her cross-examination of Steen and her statements in closing remarks clearly suggested to the jury that she thought these witnesses were lying.

*Id.* (citations omitted).

■ The State cites *State v. Pendexter*, 495 A.2d at 1241, in which we held that "not all references to the credibility of the defendant ... are improper" and that "[t]he central question is whether the comment is fairly based on the facts in evidence," and argues that in this case its closing argument was based on the facts in evidence and thus was not improper. We disagree. In *Pendexter*, a witness freely admitted that he had stolen the vehicle that was the subject of the case and acknowledged that he had subsequently lied to the owner of the vehicle when confronted with the accusation. *Id.* We concluded that, under those circumstances, the prosecutor's comments to the jury, in which he referred to that witness as an admitted thief and an admitted liar, were adequately based on the facts in evidence. *Id.* Here, Casella made no such admission. It was for the jury, not the prosecutor, to determine which witnesses were telling the truth. *See State v. Crocker*, 435 A.2d 58, 77 (Me.1981) ("Determining what credence to give to the various witnesses and their testimony is a matter within the exclusive province of the jury.").

■ The State acknowledges that in *State v. Smith*, 456 A.2d at 16, we vacated an assault conviction where the prosecutor similarly conveyed a personal belief that the defendant had lied on the stand.[2] The State nevertheless attempts to distinguish *Smith* on the basis that *Smith* involved assault charges, whereas "Casella's pattern of deception with respect to his victims was central to the State's case." The fact that the charges are based on deception does not mean that the prosecutor is therefore free to express his personal opinion that the defendant was lying in court. A rule allowing the prosecutor to express his opinion on the credibility of the defendant's testimony in cases where the defendant's veracity is central to the prosecution has no precedent in our jurisprudence. In fact, when credibility is a crucial issue, prosecutorial comments attacking a defendant's credibility can be especially damaging and deserving of sharp scrutiny. *See, e.g., State v. Smith*, 456 A.2d at 19 ("The credibility of the participants in the fight was crucial, and the prosecutor's improper remarks went directly to that issue."); *State v. Reilly*, 446 A.2d at 1130 ("The prosecutor's improper comments went directly to credibility—the principal underlying issue at trial.").

■ The only question remaining in this case is whether the prosecutor's improper comments to the jury resulted in harmless error. *See* M.R.Crim.P. 52. We should vacate the conviction unless we believe "it [is] highly probable that the error did not affect the judgment." *State v. True*, 438 A.2d 460, 467 (Me.1981). In the case now before us, the prosecutor, throughout his closing argument, repeatedly told the jury that Casella had lied to them. The prosecutor urged the jury not to be taken in by Casella's testimony which he characterized as a "pack of lies" and a "bill of goods." He concluded his

---

1. In *Steen*, the prosecutor's offensive comments included the following questions to the defendant: "So you made this one up on your own?" and "So now we have three versions ... It is hard for you to keep this all straight, isn't it?" *State v. Steen*, 623 A.2d at 149. We also found that the prosecutor's comments on the testimony of the defendant's expert witness made during her closing argument were improper. The prosecutor stated: "I suggest to you, ladies and gentlemen, that [the defendant's expert's] opinion is based on $2,500, the money the defendant paid him for his testimony." *Id.* at 149.

2. In *Smith*, the prosecutor commented to the jury that "[the defendant] gets caught lying and he can't even admit it," "You people are smarter than that, to let him come in here and tell you he was telling the truth because he wasn't," and "You tell Philip Smith if he should be accountable for what he did and held responsible for what he did or you tell him it's okay to lie." *State v. Smith*, 456 A.2d at 17.

argument to the jury by telling them that they should not "let Casella walk out of this courtroom thinking he could con you," that they should "do [their] duty and convict him," and avoid becoming "his next victim[s]." Because credibility in large measure determined the ultimate issue of guilt in this case, and because the prosecutor's improper comments went directly to credibility, *see State v. Reilly*, 446 A.2d at 1130, we cannot say that it is "highly probable that the jury's determination ... was unaffected by the prosecutor's comments." *State v. Steen*, 623 A.2d at 149.

The entry is:

Judgment vacated.

ROBERTS, GLASSMAN and COLLINS, JJ., concurring.

RUDMAN, Justice, with whom WATHEN, C.J. and CLIFFORD, J. join, dissenting.

I find the prosecutor's closing argument in the present case, when read (1) in its entirety, (2) in the context of the nature of the charges against Casella, and (3) in light of the defense Casella presented, was fairly based on the evidence introduced at trial. I, therefore, respectfully dissent from the Court's decision to vacate Casella's five criminal convictions.

While I certainly agree with the Court that expressions of a prosecutor's personal opinion on the credibility of a defendant made during a closing argument are clearly improper, *see State v. Steen*, 623 A.2d 146, 149 (Me.1993), "not all references to the credibility of the defendant or a witness are improper." *State v. Pendexter*, 495 A.2d 1241, 1241 (Me.1985). A lawyer is permitted to "argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated therein...." *State v. Harnish*, 560 A.2d 5, 9 (Me.1989) (quoting M.Bar R. 3.7(e)(2)(v)). Furthermore, that argument may be presented with vigor and zeal. *State v. Smith*, 456 A.2d 16, 17 (Me.1983). "The central question is whether the comment is fairly based on the facts in evidence," *see Pendexter*, 495 A.2d at 1241, or improperly reflects a personal belief that the defendant or a witness is a liar. Each case concerning

alleged improper argument must be examined on its own facts, *see State v. Hinds*, 485 A.2d 231, 237 (Me.1984), and "an attorney making a closing argument is not restricted to the difficult if not impossible task of providing verbatim renditions of all testimony alluded to." *State v. Doughty*, 554 A.2d 1189, 1192 (Me.1989). "In closing argument, counsel may comment on testimony and other evidence as long as they stay within the bounds of fairness." *Id.*

Unlike the charges brought against the defendants in *Steen*, 623 A.2d at 147 (gross sexual assault), and *Smith*, 456 A.2d at 16 (Me.1983) (assault), Casella was charged with theft by unauthorized taking. The central thrust of the State's case was that Casella cheated the victims out of their money, and that he operated his business on the basic principle that he would say anything, do anything, and tell any lie to get their money. The evidence presented at trial demonstrated Casella's elaborate scheme of defrauding his customers by making false promises and keeping their money without authorization. Casella himself took the stand, denied lying to the victims, and directly contradicted the State's witnesses and evidence by stating that the charges brought against him merely involved simple business disputes. By equating the theory of Casella's defense with the same principles that he exhibited in his business, and inviting the jury's comparison, the State's argument taken in full context does not amount to an expression of personal opinion as to Casella's credibility. Each reference to Casella's truthfulness, or lack thereof, was specially tied to the evidence introduced at trial. Furthermore, the prosecutor repeatedly reminded the jury that it was their duty to ultimately decide who was telling the truth. Although the prosecutor was zealous and artful, his summation merely analyzed the evidence and stated the principal factual issues before the jury in compelling terms. *See Harnish*, 560 A.2d at 10; *State v. Berkley*, 567 A.2d 915, 920 (Me.1989).

The Court's piecemeal dissection and presentation of the State's closing argument overemphasizes certain isolated excerpts of the summation, and mischaracterizes the argument as a whole. When read in isolation, the

comments cited by the Court may appear, at first glance, unduly inflammatory. However, when read in its entirety, and in the context of the nature of the specific charges brought against Casella, the State's vigorous summation was fairly based on the evidence presented at trial demonstrating Casella's propensity to intentionally deceive innocent customers and, in the circumstances of this case, did not amount to an improper injection of personal opinion. Furthermore, by hearing the prosecutor's voice inflections, and observing his demeanor and body language during the summation, the trial court was in a far better position to judge the potential effects on the jury of the prosecutor's comments, than this Court is by reading the cold, sterile, and faceless pages of a trial transcript. The trial court, in light of the live presentation, did not abuse its discretion in refusing to declare a mistrial.

Finally, even assuming that the prosecutor did improperly express his personal opinion in his closing argument, I would nevertheless reach the same result. Based on the overwhelming evidence of guilt introduced at trial, and the trial court's clear curative instruction to the jury that the arguments of counsel are not evidence, it is "highly probable that the jury's determination ... was unaffected by the prosecutor's comments." *Steen,* 623 A.2d at 149. *See State v. Ammerman,* 586 A.2d 1244, 1246 (Me.1991); *see also State v. Langill,* 567 A.2d 440, 442 (Me.1989) (trial court's instructions "that 'any statements or comments made by the lawyers in this case [are] not evidence' and that 'you are the judges of the facts,' cured any impropriety caused by the prosecutor's statements").

For the foregoing reasons, I would affirm the judgment entered on jury verdicts in the Superior Court.