**STATE of Maine**

v.

**Kenneth WEISBRODE.**

Supreme Judicial Court of Maine.

Argued Sept. 6, 1994.
Decided Feb. 1, 1995.

Stephanie Anderson, Dist. Atty., Julia Sheridan (orally), Asst. Dist. Atty., Portland, for State.

Judy Potter (orally), Cape Elizabeth, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, and DANA, JJ.

DANA, Justice.

Kenneth Weisbrode appeals a judgment of conviction on three counts of unlawful sexual contact, 17–A M.R.S.A. § 255(1)(C) (Supp. 1993), following a jury verdict in the Superior Court (Cumberland County, *Bradford, J.*). On appeal he questions evidentiary rulings, asserts that the State failed to establish that he had attained the age of fourteen and was at least three years older than the victim, argues that the State's closing argument was improper, and finally, contends that the court erroneously instructed the jury with regard to the State's burden of proof. We affirm his conviction.

The acts for which Weisbrode was convicted occurred at a fraternity house at Bowdoin College in August 1991. At the time, Weisbrode had just graduated from Bowdoin, was still living at the fraternity house, and was about to begin graduate studies at Tufts University. The victim, who was 12 years old, often spent time at the fraternity house. In January 1992 the victim went to live with his brother in Ohio and while there told his brother of the abuse. The victim's mother contacted the Brunswick Police Department which, in turn, asked Detective Sergeant Lonero, a member of the Tufts University Police Department, to assist with the investigation. Lonero interviewed Weisbrode at Tufts in May 1992.

The victim testified at trial that the first incident occurred after he and Weisbrode started wrestling in the living room of the fraternity, ending up in Weisbrode's bedroom. The second incident occurred in Weisbrode's room two days later. On cross-examination Weisbrode sought to characterize the victim as troubled and dishonest. Weisbrode suggested that the victim might have fabricated his story because he became unhappy with his living situation in Ohio and wanted an effective way to return home to Maine.

The State offered the testimony of Katheryn Stuart, a former neighbor of the victim, pursuant to the rule that the first report of sexual misconduct may be introduced, and the trial court, after a sidebar colloquy, permitted the testimony for that purpose. Stuart stated that when she asked the victim during a telephone conversation why he had run away from home, he replied, "It's gross. It's so totally gross, completely disgusting." She also stated that during a telephone discussion with the victim she suggested that he see a psychic. Stuart testified that she thought this psychic was the type of person with whom the victim might have been comfortable enough to discuss his problems. On cross-examination Stuart testified that she could not pinpoint the time of her conversations with the victim. The best she could say was that they occurred sometime between November 1991 and January 1992, and that she had received some telephone calls from the victim after he had gone to Ohio.

During its rebuttal the State called Deborah Zorach. Over Weisbrode's objection, the court allowed Zorach to testify that the victim told her that he had been abused and that he had told somebody else who had suggested he see a psychic. She testified that her conversation with the victim took place on the night *before* he went to Ohio.

The testimony was allowed for the limited purpose of rebutting Weisbrode's suggestion that the victim's report to Stuart occurred *after* he had moved to Ohio.

Weisbrode sought to introduce the testimony of Scott Thompson concerning statements Weisbrode made to Thompson about the abuse allegations after Weisbrode was interviewed by Detective Sergeant Lonero. The trial court excluded the testimony, finding that it was not admissible as a prior consistent statement[1] because a motive to fabricate on the part of Weisbrode arose at the time of the Lonero interview. Weisbrode took the stand, and testified that his only physical contact with the victim occurred when they both ran after a ball during a ping-pong game.

### First Complaint

Weisbrode argues that the trial court improperly admitted the statement about which Stuart testified, in which the incident was described as "gross" and "disgusting." He contends that the description amounts to details of the incident. Weisbrode also argues that this "first complaint" testimony should not have been admitted because the report was not made within a reasonable time of the incident.

■ A victim's out-of-court statements are admissible as a "first complaint" in the State's case-in-chief to show that the victim had reported a rape or sexual misconduct complaint to a third party. *State v. Calor,* 585 A.2d 1385, 1387 (Me.1991); *see State v. True,* 438 A.2d 460, 464 (Me.1981). The statements are admissible "to forestall the natural assumption that in the absence of a complaint, nothing . . . had occurred." *True,* 438 A.2d at 464. To be admissible as a "first complaint," the victim's statements may not contain details of the complaint, such as the identity of the perpetrator, but are limited to evidence that the complaint was of rape or

sexual conduct, and evidence of the time and place of the incident. *Id.* at 464–5. "The bare *fact* that a complaint has been made is admissible. . . ." *Id.* at 464.

■ Because Stuart's testimony disclosed neither the name of the perpetrator nor details of what happened, admitting the testimony was within the discretion of the trial court. *See State v. Tripp,* 634 A.2d 1318, 1321 (Me.1994). Stuart relayed only that portion of the victim's statements necessary to identify the reported act, namely that the victim had described it as something gross and disgusting. Moreover, Stuart's testimony that she suggested that the victim see a psychic was not improper under the "first complaint" rule, because it did not concern a detail of the abuse, but rather was offered to locate the conversation in time. *True,* 438 A.2d at 464–5.

### Rebuttal Witness

■ Weisbrode next argues that the trial court erred by admitting Zorach's testimony as part of the State's rebuttal to the defendant's case. "[R]ebuttal testimony is proper if it 'contravenes, antagonizes, confutes, or controls the inferences sought to be drawn by new facts introduced at the next previous stage.'" *State v. Cyran,* 586 A.2d 1238, 1240 (Me.1991) (quoting *Payson v. Bombardier, Ltd.,* 435 A.2d 411, 413 (Me.1981)). The trial court's admission of rebuttal evidence is reviewed with considerable deference to its opportunity to "assess the evidence in light of the testimony to be rebutted and the manner in which it was presented to the jury." *State v. Berry,* 495 A.2d 1207, 1210 (Me.1985).

In this case, the trial court carefully limited the scope of Zorach's testimony. The record supports the trial court's finding that Weisbrode attempted, on cross-examination of the victim, to show that the victim became unhappy in Ohio and that he had a motive to

---

1. A prior, out-of-court statement of a witness consistent with the witness's testimony at trial is generally not admissible because it is hearsay. *State v. Phillipo,* 623 A.2d 1265, 1267 (Me.1993). Such a statement is admissible as an exception to the hearsay rule only to rebut an express or implied charge of recent fabrication or improper motive. M.R.Evid. 801(d)(1).

M.R.Evid. 801(d)(1) provides in pertinent part: **D. Statements Which Are Not Hearsay. . . .** A prior consistent statement by the declarant whether or not under oath, is admissible only to rebut an express or implied charge against him of recent fabrication or improper influence or motive.

fabricate his allegations against Weisbrode to find an effective way to return home to Maine. Zorach's testimony establishes that the victim made a complaint of abuse prior to his departure for Ohio. Therefore, the testimony contravened the inference that the victim had a motive to fabricate that arose in Ohio. Although the testimony was properly part of the State's case-in-chief, the trial court acted within its discretion in admitting this evidence as rebuttal testimony.

### Prior Consistent Statement

■ Weisbrode's third contention is that the trial court should have admitted the testimony of Scott Thompson about Weisbrode's prior consistent statement to him. The proponent of a prior consistent statement has the burden of establishing that the statement was (1) consistent with the in-court statement of the witness, (2) offered to rebut an express or implied charge of recent fabrication or improper influence, and (3) made prior to the time the supposed motive to falsify arose. *Phillipo*, 623 A.2d at 1267; *State v. Fredette*, 462 A.2d 17, 22–3 (Me. 1983). The determination of when an implied motive to fabricate arose is left to the discretion of the trial court. *State v. Zinck*, 457 A.2d 422, 425 (Me.1983); M.R.Evid. 104(a)–(b).

■ The trial court found that Weisbrode's motive to fabricate arose at the time of the interview with Detective Sergeant Lonero and that Weisbrode's statements to Thompson did not tend to rebut the inference of recent fabrication. This determination was not clearly erroneous. *See Zinck*, 457 A.2d at 425. Weisbrode heard of the victim's allegations during the interview and was aware that he was being questioned as a suspect. Therefore, a motive to fabricate arose at the time of the interview, and the court did not err in excluding Thompson's testimony concerning Weisbrode's statements.

### Circumstantial Evidence of Age

■ Weisbrode next argues that the State failed to establish his age at the time of the abuse. A charge of unlawful sexual contact requires that the State prove that the defendant had attained the age of fourteen years and was at least three years older than the victim. 17–A M.R.S.A. § 255(1)(C) (Supp. 1993). Weisbrode raised this issue for the record after the court had instructed the jury.

The State presented no direct evidence of Weisbrode's age. Circumstantial evidence, however, is no less conclusive than direct evidence in supporting a conviction. *State v. Kenney*, 534 A.2d 681, 682 (Me.1987). A jury is entitled to rely on circumstantial evidence and its own observations in comparing a victim's and the defendant's physical characteristics and demeanor to determine the age differential of the defendant and victim. *State v. Bickford*, 497 A.2d 138, 141 (Me. 1985).

The evidence showed that the victim was 12 years old when the abuse occurred. The jury also heard testimony that Weisbrode was a recent college graduate at the time of the abuse. In addition, the jury had sufficient opportunity to observe Weisbrode's physical appearance and demeanor. The jury was entitled to rely on the circumstantial evidence and its own observations to conclude that at the time of the abuse Weisbrode was at least three years older than the victim. *See id.*

### The Closing Argument

■ The fifth issue raised by Weisbrode concerns the State's closing argument. Weisbrode argues that the closing argument was improper because the prosecutor presented his personal opinion on the credibility of the witnesses and because the argument diverted the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused. Weisbrode did not object to any of the State's closing argument. Because he failed to object at trial, we review for obvious error. Obvious error is error so highly prejudicial that it taints the proceedings and virtually deprives the defendant of a fair trial. *True*, 438 A.2d at 468.

■ In *State v. Comer*, 644 A.2d 7, 9 (Me. 1994), we reaffirmed that our rules provide that "a lawyer shall not [a]ssert a personal

opinion . . . as to the credibility of a witness . . .; but a lawyer may argue, on the lawyer's analysis of the evidence, for any position or conclusion with respect to matters stated therein[.]" *Id.* (quoting M.Bar R. 3.7(e)(2)(v)). We noted that this applies with particular force to the statements of prosecutors, and that prosecutor's statements of personal opinion are particularly troubling when the comments concern a defendant's credibility and the case is a close one. *Comer,* 644 A.2d at 9. *See also Tripp,* 634 A.2d at 1320–1; *State v. Steen,* 623 A.2d 146, 148 (Me. 1993); *State v. Casella,* 632 A.2d 121, 122 (Me.1993); *State v. Smith,* 456 A.2d 16, 18 (Me.1983); *See* Comment, *Prosecutorial Summation: Where is the Line Between "Personal Opinion" and Proper Argument?* 46 Maine L.Rev. 241 (1994).

In *Tripp,* we found obvious error in a close case that turned on whether the jury believed the victim or the defendant. The offending statements in *Tripp* were that "the [victim] told you the truth. . . . [I]t does all come down to [the victim] and Linwood Tripp, Sr., because one of them wasn't telling the truth. One of them was lying here to all of us." *Tripp,* 634 A.2d at 1321. Here, Weisbrode questions the "tone, content, innuendo, and implication" in the State's closing argument, and contends that the impropriety is summed in the prosecutor's comment, "Or you may end up saying that this 12–year–old boy . . . told you this for one reason and one reason only, and that is because it happened." Although Weisbrode contends that this statement is similar to the prosecutor's argument in *Tripp,* the prosecutor here was merely advising the jury that it could conclude that the victim was telling the truth. This is not improper. Weisbrode took the stand and directly contradicted the victim's testimony, turning the trial into a credibility contest. The prosecutor pointed out the inconsistencies in the evidence and in certain witnesses' testimony. The prosecutor's statements did not represent improper personal opinion. The argument was a reply to

a defense strategy that placed the defendant's credibility in competition with that of the victim; it asked the jury to use its common sense to assess the credibility of witnesses in light of the testimony given by the victim and the defendant's vested interest in securing an acquittal. *See State v. Hinds,* 485 A.2d 231, 238 (Me.1984); *State v. Weeks,* 634 A.2d 1275, 1276–77 (Me.1993).

Weisbrode also questions the prosecutor's comment, "[I]f [the complainant] is making this up . . . he would have to be a sociopathic little devil." The prosecutor is free to use " 'wit, satire, invective and imaginative illustration' " in arguing the State's case. *Hinds,* 485 A.2d at 237 (quoting *State v. Pineau,* 463 A.2d 779, 780 (Me.1983)). The prosecutor may also present an analysis of the evidence in summation with vigor and zeal. *State v. Johnson,* 472 A.2d 1367, 1373 (Me.1984). *See generally* M.Bar R. 3.7(e)(2). The prosecutor should, however, " 'refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the prevailing law.' " *Hinds,* 485 A.2d at 237 (quoting *Pineau,* 463 A.2d at 781) (itself quoting A.B.A. Standards Relating to the Prosecution Function § 5.8(d) (1971)). The prosecutor's comment came close to diverting the jury from its duty; there was neither evidence that the victim was sociopathic nor was this the issue to be decided by the jury. Defense counsel had attempted, however, to show that the victim had problems with his family, had run away from home, and had lied in the past. In light of this questioning and in reading the argument as a whole, we find that these words, though perhaps ill-chosen, did not deprive the defendant of a fair trial.

### Reasonable Doubt Instruction

Finally, Weisbrode argues that the trial court erred in its reasonable doubt instruction.[2] Weisbrode did not object to the

---

2. Weisbrode asserts the trial court erred in including the terms "conscientious," "truth," (in the context of the statement "remember at all times . . . your sole interest is to seek the truth from the evidence in this case") and "true."

Weisbrode also asserts that the court erred in using the language

> Now, the State is not required to prove guilt beyond all possible doubt; the test is one of reasonable doubt. And a reasonable doubt is

instructions, and when a jury instruction is challenged for the first time on appeal, "the judgment will be vacated only if 'the instruction, viewed in the context of the charge as a whole, constitutes highly prejudicial error tending to produce manifest injustice.'" *State v. Dow*, 616 A.2d 864, 865 (Me.1992) (quoting *State v. White*, 570 A.2d 823, 825 (Me.1990). Jury instructions are reviewed in their entirety to determine if they are adequate, taking into consideration the total effect created by the instructions and the potential for jury misunderstanding. *State v. Barry*, 495 A.2d 825, 827 (Me.1985).

 Taking the instructions as a whole, they properly detail the reasonable doubt standard. In *State v. Estes*, 418 A.2d 1108, 1115 (Me.1980), as in this case, the defendant challenged the trial court's use of the phrase "a doubt based on reason and common sense." We held that a reference to "common sense" imposed no additional requirement but served only to emphasize that the jury should bring good judgment to bear on its deliberations. *Id.* In *State v. Palumbo*, 327 A.2d 613, 616 (Me.1974), the defendant challenged the court's use of the phrase "conscientiously and deliberately weighing all of the testimony." We held that the charge was not erroneous. *Id.* In this case, the court's use of the phrase "conscientiously weighing all the evidence" is appropriate. It suggests that the jury should carefully and thoroughly consider all the evidence. Similarly, the use of the words "truth" and "true" was appropriate. The court instructed the jury to seek truth from the *evidence.* The approved charge in *Estes* referred to a belief that "the charge is almost certainly true." *Estes*, 418 A.2d at 1116. This language did not shift the burden of proof to the defendant. The court instructed the jury that "the burden is always upon the State to prove each and every element of the offense beyond a reasonable doubt," and that "the evidence must be sufficient to give you a conscientious belief that the charge is almost

just what the words imply: It's a doubt based upon reason and common sense.
and in using the language
[A reasonable doubt is] not based upon a mere guess, surmise or bare possibility. It's a doubt

certainly true...." The instructions properly conveyed the reasonable doubt standard.

The entry is:

Judgment affirmed.

All concurring.

which a reasonable person, without any bias, prejudice or interest, and after conscientiously weighing all the evidence would entertain as to the guilt of the accused.