**STATE of Maine**

v.

**Michael PELLETIER.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 21, 1995.

Decided April 2, 1996.

---

1. We reject as being without merit Peterson's additional contention that the court erroneously relied on evidence other than Beatty's original will in ascertaining her true intent, including four subsequent drafts made by two attorneys, several pages of handwritten notes, and testimony of Beatty's attorneys and staff regarding their attempts to aid her in preparing a new will.

Neale T. Adams, District Attorney, John M. Pluto, Assistant District Attorney, Caribou, for the State.

Thomas M. Mangan, Lewiston, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

Michael Pelletier appeals from the judgments entered on jury verdicts in the Superior Court (Aroostook County, *Pierson, J.*) finding him guilty of two counts of unlawful trafficking in scheduled drugs, 17–A M.R.S.A. § 1103 (1983 & Supp.1995), and two counts of aggravated trafficking in scheduled drugs, 17–A M.R.S.A. § 1105(1)(C) (Supp. 1995). Pelletier challenges the denial of his motion to suppress evidence and the sufficiency of the evidence. He further argues that certain comments made by the State during its opening statement denied him a fair trial. We affirm the judgments.

## I.

■ Pelletier moved to suppress as the products of an unreasonable search and seizure all evidence, documents, photographs, and videotapes seized in the police raid on his premises. He urges that the search warrant's description of the premises to be searched lacks the constitutionally required specificity and that the seizure of a thermos filled with marijuana from its hiding place in woods behind his home was beyond the lawful scope of the warranted search. A decision as to the constitutional[1] adequacy of a search warrant is a matter of law. *See State v. Dube,* 655 A.2d 338, 340 (Me.1995). We review the search and seizure of evidence for constitutional adequacy *de novo. Id.*

■ A warrant must describe the property to be seized with such particularity that an executing officer will be able to identify it "with certainty." *State v. Sweatt,* 427 A.2d 940, 949 (Me.1981). The warrant can leave nothing to the discretion of the executing officer as to what is to be taken. *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 75, 72 L.Ed. 231 (1927). Here the warrant's description of property to be seized is sufficient to permit the executing officer reasonably to identify what is to be seized. The warrant does not allow officers to seize property at will and is constitutionally sufficient.

■ Here the warrant description of the residence to be searched, including its "appurtenances and outbuildings," also makes it possible for drug agents to identify with reasonable effort and reasonable certainty the premises to be searched. The warrant therefore meets the constitutional safeguards as to specificity of place to be searched. *State v. Brochu,* 237 A.2d 418, 422 (Me.1967).

■ Evidence found lying in "open fields" outside the "curtilage" of Pelletier's home is not considered to be the product of a search of a house for constitutional purposes and may be seized without a warrant. *State v. Cayer,* 617 A.2d 208, 210 (Me.1992) (citing *Hester v. United States,* 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924)). *See also United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987). The thermos stuffed with baggies of marijuana, which was found in the woods 250–300 yards behind Pelletier's residence, was outside the curtilage of his home and therefore may not be excluded as the product of an unreasonable search.

## II.

Pelletier challenges references made during the State's opening statements to his income and assets and the State's warning to the jury not to be misled by the discrepancy between Pelletier's comfortable rural lifestyle and the desperate crack house lives of drug criminals portrayed in the mass media. Pelletier argues these comments denied him a presumption of innocence and were so highly prejudicial as to constitute manifest injustice.

As we have previously stated,

[W]hile a prosecutor "may strike hard blows, [she] is not at liberty to strike foul ones. It is as much [her] duty to refrain from improper methods calculated to produce wrongful conviction as it is to use every legitimate means to bring about a just one."

1. Amendment IV of the Constitution of the United States provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*State v. Steen,* 623 A.2d 146, 148 (Me.1993) (quoting *State v. Collin,* 441 A.2d 693, 697 (Me.1982)).

Pelletier did not object at the trial to the State's reference to his income and assets. Pelletier did object at the close of the State's opening statement to the comments made by the State in seeking to counter any inference by the jury that Pelletier's rural lifestyle and confinement to a wheelchair insulated him from involvement in criminal conduct. The court declined to give a curative instruction to the jury.

When objection to prosecution statements is made at trial, we review prosecutorial misconduct for harmless error pursuant to M.R.Crim.P. 52(a). We will not vacate a judgment for an error objected to at trial so long as it is highly probable that the jury's determination of guilt was unaffected by the prosecutor's comments. *State v. Steen,* 623 A.2d at 149 (citing *State v. True,* 438 A.2d 460, 467 (Me.1981)). When no objection to prosecution statements has been raised at trial, we determine on appeal whether the statement was improper and, if so, whether such improper conduct is obvious error pursuant to M.R.Crim.P. 52(b). *State v. Marshall,* 628 A.2d 1061, 1061 (Me.1993). Error is obvious only when it is so highly prejudicial and so taints the proceedings as virtually to deprive the defendant of a fair trial. *State v. Magoon,* 649 A.2d 1115, 1117 (Me.1994).

Here the prosecution statements to which Pelletier did not object at the trial do not constitute obvious error. The court's ruling on those statements to which Pelletier did object at the trial does not constitute error.

### III.

Pelletier contends the evidence is insufficient to establish his unlawful possession of marijuana and hashish and insufficient to establish his intent to transfer drugs to others for consideration. On the evidence presented a factfinder rationally could find beyond a reasonable doubt that Pelletier knew about the marijuana and hashish on his premises and that he had control over the drugs and could reduce them to his physical possession at his pleasure. The evidence is sufficient to find Pelletier in possession of marijuana and hashish and that Pelletier intended to sell the drugs.

Pelletier, a paraplegic, also was convicted of aggravated trafficking in marijuana and hashish. 17–A M.R.S.A. § 1105(1)(C) (Supp.1995).[2] He argues that the evidence is insufficient to establish that he was in possession of a firearm at the time of any drug trafficking. He argues that the weapons in his residence constituted a gun collection. We review the trial court's construction of "possession" of a firearm with respect to the aggravated trafficking statute *de novo* for errors of law. *See Community Telecommu-*

**2.** 17–A.M.R.S.A. § 1105(1) (Supp.1995) provides in pertinent part:

> 1. A person is guilty of aggravated trafficking or furnishing scheduled drugs if:
> ....
> C. A person violates section 1103, 1104 or 1106, and, at the time of the offense, the person uses, carries, possesses or is armed with a firearm; ....

In 1989 the Legislature added section 1105(1)(C) to the definition of the offense of aggravated drug trafficking. P.L.1989, ch. 333 § 2. The title of the bill introducing the change, L.D. 1116, was "An Act to Increase the Penalty for Drug Crimes Committed while in Possession of a Firearm." The bill contained no separate statement of purpose. The addition of the firearm provision to elevate sentencing tracks the purpose of the federal drug aggravated trafficking statute, 18 U.S.C. § 924(c)(1) (1976 & Pamph.1995), which is analogous to the Maine statute except the federal statute for aggravating a drug offense with a firearm includes as aggravating circumstances only "uses or carries" while the Maine statute includes "uses, carries, possesses or is armed with."

In *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court construed "use" of a firearm as that term is used in 18 U.S.C. § 924(c)(1) (1976 & Pamph. 1995) to mean more than a showing of mere possession. The court concluded that to establish "use" of a firearm pursuant to section 924(c)(1) the government must show "active employment" of a firearm. The court's construction of "active employment" includes brandishing, displaying, bartering, striking with, and firing or attempting to fire a firearm. "Use" pursuant to the federal statute, 18 U.S.C. § 924(c)(1) (1976 & Pamph.1995), does not include placement of a weapon for later active use.

*nications Corp. v. Loughran,* 651 A.2d 373, 376 (Me.1994).

In construing the language of any statute we look first to the plain meaning of the words; where the plain words are ambiguous we construe the statute to effect legislative intent. *See Marchand v. Eastern Welding Co.,* 641 A.2d 190, 192–93 (Me.1994). We have construed "possession" to include both actual and constructive possession. *State v. Lambert,* 363 A.2d 707, 711 (Me.1976).

> Where the State alleges a crime of possession of a physical object, it must prove possession by showing that the accused at some time bore one of two relationships to the object: he either had immediate physical control or occupancy of the object or knew where it was and had the intention and ability to gain physical control or occupancy of it.

*State v. Koehling,* 381 A.2d 12, 14 (Me.1978).

The record establishes that Pelletier knew where the guns were and that he had the ability to gain physical control over them. A factfinder rationally could find beyond a reasonable doubt that Pelletier "possessed" his home arsenal at the time of his drug trafficking activities.

The entry is:

Judgments affirmed.

All concurring.