**STATE of Maine**

v.

**Ralph BOYD.**

Supreme Judicial Court of Maine.

May 3, 1979.

Charles K. Leadbetter (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Smith, Elliott, Wood & Nelson, P. A., by George F. Wood (orally), Terrence Garmey, Saco, for defendant.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

Ralph Boyd was tried before a jury and convicted of robbery. 17–A M.R.S.A. § 651 (1975). Because evidence was admitted over objection and because the prosecutor on two occasions was guilty of impermissible argument, coupled with an improper comment by the presiding justice in ruling on an objection, Boyd contends on appeal that he did not receive a fair trial. We agree and sustain the appeal.

On January 18, 1978, at about 10:30 a. m., the North Berwick Branch of the Kennebunk Savings Bank was held up by two masked men, each armed with a shotgun. After taking approximately $10,000 in cash, the two men made their escape in a 1969 Chevrolet Camaro which had been parked at the curb during the robbery and operated by a third person. Shortly after the robbery the police followed footprints in the snow from where a car had stopped some distance from the bank and recovered the stolen money [1] contained in a pillowcase, as well as two shotguns and a .22 pistol found in another pillowcase. Proceeding on this road the police discovered the "get away" car "stuck in the snow." Following footprints leading therefrom they then recovered abandoned clothing consistent with that which had been worn by the robbers.

A fair reading of the transcript fails to disclose any direct evidence to demonstrate that Boyd was either one of the two masked bandits or the driver of the 1969 Camaro.

The only testimony introduced which would inculpate Boyd as an accomplice came from one Maryann Koppell, who described Boyd as a "boyfriend" with whom she had once lived for a short time. Miss Koppell was the owner of the 1969 Chevrolet Camaro. She had loaned the car to Boyd, who had obtained and installed a battery therein since, otherwise, the car

---

1. Included was certain "bait money" which was identified by recorded serial numbers.

was inoperative. Miss Koppell gave Boyd a .22 pistol in exchange for the battery. She also testified that Boyd had an extra key made for the car which he returned after the robbery and told her to "get rid of it." Miss Koppell's specific testimony linking Boyd to the robbery was the following:

A He told me that Kevin, Tommy [2] —Kevin and Tommy were planning to rip something off and they estimated about $10,000. They were planning to get $10,000 and from that amount he assumed it would be a bank, and he was expecting to get $500 out of it.

Q And at that time did he mention anything about the use of your car?

A About ten minutes after, yes.

Q And what was that?

A He said that he promised them the use of my car.[3]

She also testified that on the day before the robbery she and Boyd drove to the apartment of a young lady, the girlfriend of "Kevin," for the purpose of leaving the .22 pistol. Miss Koppell claimed she was at the home of one Sherry Peters from midnight until after 1:00 p. m. on the day of the robbery. In the early afternoon of that day Boyd phoned her and told her that her car "had been stolen," that he would report it to the police, and "they would" pay for an attorney "if I should need" one.

The appellant elected not to become a witness. His criminal responsibility in this case depended entirely on the believability of Miss Koppell's testimony, which we have summarized and which was uncorroborated. For example, "Kevin's" girlfriend, in whose

home there had been a meeting of several people including Boyd when the robbery was being planned, was not called as a witness. Sherry Peters was not called to verify that Miss Koppell was with her at the time of the bank robbery. In short, absent Miss Koppell's own testimony circumstantial evidence would point as strongly to her as the prime accomplice of the two robbers as it would to Boyd. It was her car, her .22 pistol was found with the two shotguns, and there was no testimony as to the identity, let alone the sex, of the driver of the get away car.

We now turn to the alleged prejudicial errors.

■ Over defense counsel's strenuous objection Miss Koppell, after indicating that her car needed a new battery and that Boyd agreed to supply the same in exchange for the .22 pistol, testified as follows:

Q Do you have any idea where that battery came from?

A Yes.

Q And where did it come from?

. . . . .

A From the Tri-City Cinema parking lot in Newington.

Q What did the Defendant tell you about that battery?

A He just told me that he had taken it from another car.

Q Does the Defendant himself own a car?

A Not at the time.

It is difficult for us to understand how this testimony was relevant as that term is defined in Rule 401, M.R.Evid.[4] It would

2. The full names were Kevin Sweat and Thomas Lynch.

3. 1. A person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions:

. . . . .

E. He or an accomplice to his knowledge is armed with a dangerous weapon in the course of a robbery as defined in paragraphs A through D.

17–A M.R.S.A. § 651(1)(E).

3. A person is an accomplice of another person in the commission of a crime if:

A. With the intent of promoting or facilitating the commission of the crime, he solicits

such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct . . . .

17–A M.R.S.A. § 57(3)(A).

4. 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Rule 401, M.R.Evid.

be "of consequence to the determination" of whether or not Boyd was an accomplice to the robbery to prove that he provided a battery so that the borrowed car could be used as the "get away" vehicle. *State v. Heald,* Me., 393 A.2d 537, 542 (1978). As the State seems to concede in its brief, however, "the actual method of acquisition [of the battery] does not appear to bear logical relevancy" as evidence of Boyd's planned participation in the upcoming robbery. We agree. It was error to admit the testimony.

We have recently held it was reversible error to admit evidence of prior criminal conduct where there was no "rational nexus" between that conduct and "proof of the criminal intent requisite to convict the defendant of [the crime] charged." *State v. Grant,* Me., 394 A.2d 274, 276 (1978); *see also State v. Eaton,* Me., 309 A.2d 334, 337 (1973). The evidence should have been excluded.

■ During the course of the prosecutor's argument to the jury he made the following statement:

> [PROSECUTOR]: In this case I think we can say when we talk beyond a reasonable doubt with respect to Ralph Boyd that you're going to have to be satisfied in your hearts that this last witness was truthful. If you find that she was telling the truth, then that is sufficient to convict Ralph Boyd because, ladies and gentlemen—and the State is the first to admit it—were it not for the testimony of this young lady, Ralph Boyd would not be convicted, Kevin Sweat would not be convicted, Thomas Lynch would not be convicted—
>
> [DEFENDANT'S COUNSEL]: Objection.
>
> [PROSECUTOR]: —nobody would be convicted.

Defense counsel stated with factual accuracy that the record was devoid of any direct evidence that Kevin Sweat and Thomas Lynch were the bank robbers, thus rendering the prosecutor's argument improper. Since the prosecutor argued facts not found in the testimony, this position is correct. *State v. Viger,* Me., 392 A.2d 1080, 1084 (1978). The point was appropriately saved for appellate review.

■ The justice presiding, after denying the motion for a mistrial, then instructed the jury:

> THE COURT: I want to clarify to the jury because I was going to instruct you eventually, *but the reference by the State in connection with these people who committed the robbery,* you will dismiss that from your mind. You will not consider that, but I want to clarify something in the last analysis, and I'm going to give you instructions, the arguments of counsel in this case are not to be considered as evidence. It's only the testimony. You remember what the testimony is, not what the State or the Defendant say it is.

(emphasis supplied). Defense counsel did not object to this language but now argues that the emphasized portion thereof compounded the error initiated by the prosecutor's misstatement of the evidence, and is cognizable on appeal as obvious error under Rule 52(b), M.R.Crim.P. 14 M.R.S.A. § 1105 (1965) prohibits a presiding justice from expressing "an opinion upon issues of fact arising in the case." The statement was in violation of the statute since the justice characterized Sweat and Lynch as the "people who committed the robbery." Because no objection was made we may only consider the error on appeal if it

> was so highly prejudicial and calculated to result in injustice that an unjust verdict would inevitably result or when it is apparent from a review of all the record that the accused has not had the impartial trial to which under the law he is entitled.

*State v. Rowe,* Me., 238 A.2d 217, 225 (1968).

Although the State had attempted to introduce evidence that Maryann Koppell had given a statement to the police, such evi-

dence had been excluded. Despite that fact the prosecutor used this language in his argument:

> Ladies and gentlemen of the jury, on the basis of that particular evidence and on the basis of her testimony, and I think it was credible testimony—she had nothing to lie about. *She went to the police for a second time a few days after the bank robbery and as she testified she gave them a statement. I think her testimony contained the same facts that she related to you this morning.*

(emphasis supplied). Although this argument exceeded permissible limits because not premised on evidentiary facts, the defendant made no objection.

Although Rule 52(a), M.R.Crim.P., allows an appellate court to disregard saved trial errors that do not "affect substantial rights," Rule 52(b) allows such a court to notice "[o]bvious errors or defects affecting substantial rights" even though no objection was made at the time.

■■ In summary, an overview of this record discloses two errors saved by objection and two errors not so saved. Initially, the State was permitted erroneously to characterize Boyd as a petty thief. Additionally, the prosecutor was allowed to argue that the testimony of Maryann Koppell was sufficient not only to convict Boyd but two others against whom there was no direct evidence of guilt. This improper argument was further supported when the justice, albeit inadvertently and without objection, improperly suggested that these people "committed the robbery." Finally, the prosecutor impermissibly attempted, in argument to the jury, to bootstrap the credibility of Maryann Koppell by suggesting consistency between her testimony and a prior statement she had given to the police. From a review of the record in its totality, we are unable to say beyond a reasonable doubt that the four errors, when considered cumulatively, were harmless. As we said in *State v. Gervais,* Me., 303 A.2d 459, 463 (1973):

> In legal contemplation 'harm' results not only when error causes 'prejudice', in the

sense of producing subjective ill-will or bias in the minds of the jury, but also when it creates 'prejudice' by furnishing to the jury, in violation of defendant's constitutional rights, evidence which significantly assists the jury to find one conclusion fair and reasonable on the basis of *all* the evidence *admitted* when, *absent* the improperly admitted evidence, the jury, equally as fairly and reasonably, might have arrived at a contrary determination.

The entry is:

Appeal sustained.

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with this opinion.

WERNICK, J., did not sit.