# United States Court of Appeals
## For the First Circuit

No. 08-1497

UNITED STATES OF AMERICA,

Appellee,

v.

FELIX GONZALEZ-MELENDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lipez, Hansen[*] and Howard,
Circuit Judges.

Rafael F. Castro Lang for appellant.
German A. Rieckehoff, Assistant United States Attorney, with
whom Rosa E. Rodriguez Velez, United States Attorney and Nelson
Pérez-Sosa, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

January 13, 2010

[*]Of the Eighth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  In this opinion, we address several issues with respect to the conviction and sentence of Felix Gonzalez-Melendez for aiding and abetting a carjacking in violation of 18 U.S.C. § 2219(1) and (2).  Previously, we remanded a portion of this case to the district court (we did, however, retain jurisdiction), so that it could determine whether certain prior out-of-court statements made by Lawrence Evans, the supervisor of both the victim of the carjacking and the appellant, were discoverable under the Jencks Act.  See United States v. Gonzalez-Melendez (Gonzalez-Melendez I), 570 F.3d 1, 2-3 (1st Cir. 2009) (per curiam).  In addition, we asked the district court, on remand, to augment the record with respect to its handling of a jury note.  This note had requested copies of the indictment and the court's instructions of law, as well as an explanation of an unspecified issue.  See id. at 3.

Now that the district court has provided the information we sought, we proceed to decide the totality of Gonzalez-Melendez's appeal.  Although the trial leading to the appellant's conviction was not free from infirmity, it did not suffer from a crippling malaise.  Accordingly, we affirm the conviction.  The same cannot be said about the sentence:  as the government concedes in its brief, the appellant was not afforded the opportunity to allocute before the district court pronounced sentence.  Consequently, we vacate the sentence and remand for re-sentencing.

## I. Facts

This case began when the appellant,[1] who was a long-time employee of Essroc San Juan, a cement manufacturer, who had ascended from his position as control room operator to process engineer, was passed over for promotion to the position of production manager. As the appellant was the only qualified applicant within the San Juan plant who applied for the position, management conducted a broader search and settled on Kevin Grotheer, who was previously employed at one of Essroc's plants in Canada, to fill the production manager position. Gonzalez-Melendez, who had a history of difficult relations with his colleagues, was displeased with this personnel action, and his relationship with Grotheer was strained from the beginning.

At one point, the appellant expressed his anger at and frustration with Grotheer to three acquaintances. He concluded this conversation by expressing his wish that someone physically assault Grotheer. There was further testimony that Gonzalez-Melendez met with these three acquaintances to develop a plan to carjack Grotheer in the hope of frightening Grotheer so thoroughly

---

[1]The appellant does not challenge the sufficiency of the evidence, and the facts are largely not in dispute. We thus provide a truncated background narrative. See United States v. Santiago, 566 F.3d 65, 67 (1st Cir. 2009). We supplement this description with additional details as necessary to resolve issues raised in this appeal.

that he would leave Puerto Rico, thereby clearing the way for the appellant to ascend to the production manager position.

A plan to effectuate this goal was eventually hatched. As agreed, Gonzalez-Melendez called to inform his accomplices when Grotheer left the plant one evening in November 2006. Consistent with their plan, Gonzalez-Melendez's accomplices successfully carjacked Grotheer using several firearms, and robbed him of approximately $700. In addition, the accomplices left Grotheer unharmed on the side of the road, and drove off in the company-owned Jeep that Grotheer had been driving.

The next morning, Grotheer received a threatening voice message from an unidentified caller, which he relayed to the general manager of Essroc San Juan, Lawrence Evans. As a result of receiving this message, Grotheer relocated to another part of Puerto Rico. Even after this move Grotheer continued to fear for his safety, and in January 2007 he left Puerto Rico due to these safety concerns.

The police commenced an investigation of the carjacking, and in connection therewith interviewed Gonzalez-Melendez. In the interview, Gonzalez-Melendez implicated his accomplices and made no secret of his anger and resentment that Grotheer was selected to fill the production manager position. In the course of this dialogue, Gonzalez-Melendez admitted that he hoped that Grotheer

-4-

would suffer physical harm, which would induce him to leave Puerto Rico.

In due course, a grand jury indicted the appellant on one count of aiding and abetting a carjacking in violation of 18 U.S.C. § 2119 (1) and (2), and one count of using a firearm during and in relation to a carjacking (which is a crime of violence), in violation of 18 U.S.C. § 924(c).

The case proceeded to trial, during which Gonzalez-Melendez lodged challenges to several of the district court's rulings, including a challenge to the court's conduct of jury selection. In addition, the defendant challenged the district court's evidentiary rulings with respect to certain out-of-court statements testified to by both Grotheer and Evans. Relatedly, Gonzalez-Melendez asserted that he was entitled to discovery of certain prior out-of-court statements that Evans had made to the FBI, which were allegedly recorded on an FD-302 Form. Finally, the appellant objected to the district court's handling of the first of several notes the jury sent the judge. Specifically, Gonzalez-Melendez contended that no attempt was made to inform him of this note, and that, in violation of Rule 43 of the Federal Rules of Criminal Procedure he was given no opportunity to argue for a proposed response.

The jury convicted Gonzalez-Melendez as to the carjacking count, but acquitted him as to the firearms count. After the

-5-

preparation of a pre-sentence report and the submission of sentencing memoranda and supporting documents, the district court imposed a sentence of 121 months, which was the lowest sentence within the Guidelines range, along with a term of three years' supervised release. During the course of sentencing, the appellant was not afforded an opportunity to allocute or a functionally equivalent opportunity to address the court directly and advocate for an appropriate sentence.

This timely appeal followed. In our initial consideration of the case, we noted that the government conceded that the district court had not conducted an independent review of the FD-302 Form, and we remanded the case to permit the district court to conduct such a review. See Gonzalez-Melendez I, 570 F.3d at 2-3. Since a remand was already required to resolve the Jencks Act issue, we also invited the district court to augment the record with regard to its handling of the first jury note. See id. at 3.

On remand, the district court ordered the FD-302 Form disclosed to appellant's trial and appellate counsel. In addition, the court clarified that its recollection was that it had independently reviewed the 302 Form and concluded that the 302 Form was not a discoverable "statement," within the meaning of the Jencks Act, 18 U.S.C. § 3500. In response to a request from the defendant, on August 7, 2009, the district court held a hearing at which the FBI agent who prepared the 302 Form at issue testified

that he did not record or transcribe Evans's statement, nor did Evans sign or adopt either the agent's notes or the 302. Based on this testimony and its own recollection, the district court concluded that the 302 Form was not Jencks material.

In addition, in its July 7, 2009 submission to us, the district court explained its recollection of its handling of the first jury note.[2] According to the district court, consistent with its routine practice, as well as the contemporaneously-produced Minutes of Proceedings, it discussed the jury note with counsel and provided the jury with copies of the indictment and the charge.

## II.  Challenge to Jury Selection

With these additions to the record, we now address all remaining issues in the appeal, beginning with appellant's challenges to the conduct of jury selection.

In this case, the district court employed the so-called "blind strike" method of jury selection. Under this method, both parties simultaneously, rather than in alternating strikes, exercise their peremptory challenges and thus do not know which jurors the other has struck. E.g., United States v. Bermudez, 529 F.3d 158, 163-64 (2d Cir. 2008), cert. denied, 129 S. Ct. 956 (2009). The Rules of Criminal Procedure provide that ordinarily a

---

[2]In this note, the jury requested copies of the indictment and the court's instructions of law, as well as an explanation of an unspecified issue from the district court. See Gonzalez-Melendez I, 570 F.3d at 3.

defendant in a non-capital felony case is entitled to ten peremptory challenges, and the prosecution is entitled to six. Id. at 164 (citing Fed. R. Crim. P. 24(b)(2)); see also United States v. Brown, 510 F.3d 57, 72 n.12 (1st Cir. 2007). Should the district court choose to seat any alternate jurors, see Fed. R. Crim. P. 24(c)(1), the rules require that each party be given additional peremptory challenges. Fed. R. Crim. P. 24(c)(4). These additional peremptory challenges may only be exercised on alternate jurors. Id.; United States v. Brown, 510 F.3d 57, 72 (1st Cir. 2007). To ensure this, the district court is required to designate the alternate jurors at voir dire. Brown, 510 F.3d at 72.

Here, the district court chose to seat two alternate jurors. Consistent with Rule 24(c)(4)(A), it awarded each party an additional peremptory challenge. See Rule 24(c)(4)(A) (providing that each party is entitled to "One Additional peremptory challenge" when the court empanels two alternates). This gave the defense a total of eleven peremptory challenges (ten from Rule 24(b)(2) and one from Rule 24(c)(4)(A)), and the government seven (six from Rule 24(b)(2) and one from Rule 24(c)(4)(A)).

At voir dire, however, the court did not designate which jurors would be alternates. Instead, it allowed each side to exercise their peremptory strikes against an undesignated pool of jurors. The defendant argues that this jury selection procedure

-8-

violated Rule 24(c)'s explicit command that the additional peremptory challenge conferred by that Rule be used only to strike alternate jurors, and consequently, impaired his exercise of his peremptory challenges. Our review of this argument, preserved below, is de novo, see United States v. Gonzalez-Velez, 466 F.3d 27, 39 (1st Cir. 2006).

The district court erred when it failed to designate the alternate jurors at voir dire. "The mandate in Rule 24(c)(4) that 'additional challenges may be used only to remove alternate jurors' implies that these alternates must be designated at voir dire, when the parties still have the opportunity to use peremptory challenges to remove potential jurors . . . ." Brown, 510 F.3d at 72; United States v. Flaherty, 668 F.2d 566, 601 (1st Cir. 1981); see also United States v. Brewer, 199 F.3d 1283, 1287 (11th Cir. 2000); United States v. Love, 134 F.3d 595, 601 (4th Cir. 1998).

Gonzalez-Melendez argues that this error requires automatic reversal. He relies upon our decision in United States v. Vargas, in which we said that "[t]he denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing or prejudice." 606 F.2d 341, 346 (1st Cir. 1979) (quoting Swain v. Alabama, 380 U.S. 202, 219 (1965)). In recent years, however, the Supreme Court has disavowed the sort of reasoning used in Vargas and has indicated that mistaken denials of peremptory challenges do not ordinarily warrant automatic reversal.

-9-

See Rivera v. Illinois, 129 S. Ct. 1446, 1455 (2009); United States v. Martinez-Salazar, 528 U.S. 304, 317 n.4 (2000). Instead, we must ask whether the Rule 24(c)(4) error affected Gonzalez-Melendez's substantial rights. Fed. R. Crim. P. 52(a). Under that approach, we deem non-constitutional errors to be harmless when "it is highly probable that the error did not influence the verdict." United States v. Pakala, 568 F.3d 47, 52 (1st Cir. 2009) (quoting United States v. García-Morales, 382 F.3d 12, 17 (1st Cir. 2004)).

On two previous occasions, we have held that a violation of Rule 24(c) did not affect the defendant's substantial rights. Brown, 510 F.3d at 72; Flaherty, 668 F.2d at 601. In both of these decisions, we expressed skepticism about the prejudicial impact of a Rule 24(c) violation. Brown, 510 F.3d at 73 ("[W]hile we regret the district court's failure to follow the rule, we cannot imagine how Brown's substantial rights could possibly have been prejudiced."); Flaherty, 510 F.3d at 73 ("Despite the clear transgression of the rule, we do not perceive how defendants' exercise of their peremptory challenges was curtailed in any way. . . We do not think that combining the regular and alternate challenges amounts to a violation of defendants' substantial rights . . . ."). Gonzalez-Melendez, however, distinguishes Brown and Flaherty. Unlike in those cases, he observes, in this case an alternate juror was actually seated. Thus, he claims, prejudice is readily apparent in his case.

-10-

We do not see how that conclusion follows. It is not evident that the composition of the jury would have differed had the district court adhered to Rule 24(c)(4). Moreover, even if a different venire member would have been selected as the alternate juror, there is no basis in the record for concluding that the alteration in jury composition had an injurious influence on the verdict. Therefore, we conclude that the court's error was harmless.

### III. Evidentiary Objections

We turn next to the appellant's evidentiary objections. Specifically, he argues that the testimony of Evans and Grotheer regarding a threatening voice message Grotheer received should have been excluded as hearsay or as unduly prejudicial given its limited probative value under Rule 403. A district court's evidentiary rulings, particularly those made pursuant to Rule 403, are due considerable deference. United States v. Wyatt, 561 F.3d 49, 53 & n.3 (1st Cir.), cert. denied, 129 S. Ct. 2818 (2009) (citation omitted); Foster-Miller, Inc. v. Babcock & Wilcox Can., 210 F.3d 1, 7-8 (1st Cir. 2000).

We begin with the hearsay argument. In a single sentence of his brief, Gonzalez-Melendez asserts that "[t]he testimony of Lawrence Evans concerning the phone calls made to Kevin [Grotheer] outside of his presence was not only hearsay but objectionable under Fed. R. Evid. 403 since their probative value was outweighed

-11-

by the improper prejudice caused." Aside from this, the appellant makes no further argument about hearsay; he does not explain whether Evan's testimony was offered for its truth, offered to show its effect on the speaker, or was subject to any of the exceptions or exclusions to the hearsay rule. Indeed, Gonzalez-Melendez does not so much as cite to the relevant Rule of Evidence. In these circumstances, the appellant's hearsay argument, which does not explain why Evans's testimony was hearsay, lacks sufficient developed argumentation and is therefore waived. United States v. Cruz-Rodriguez, 541 F.3d 19, 30 (1st Cir. 2008), cert. denied, 129 S. Ct. 1017 (2009) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

The appellant's remaining evidentiary argument is that the testimony about the voice mail was unduly prejudicial in light of its limited probative value. When testifying about the voice mail, neither Evans nor Grotheer identified who left the voice mail. Accordingly, the appellant now claims that this testimony left the jury to speculate that the appellant was somehow responsible for the threatening voice mail.

Even assuming that the court erred in admitting the testimony, any error was harmless. See Fed. R. Crim. P. 52(a).[3]

_____

[3] Although we are treating the appellant's 403 argument as preserved, a strong argument could be made that it was not. A review of the record indicates that appellant's counsel did not object to either of the witness' testimony on 403 grounds. See United States v. Henderson, 320 F.3d 92, 102 (1st Cir. 2003) ("If

-12-

The government presented ample evidence regarding the appellant's animus towards Grotheer. The jury heard testimony that Gonzalez-Melendez resented Grotheer's selection as production manager, that he had a hostile relationship with Grotheer and other co-workers, that he had expressed a desire to harm Grotheer, and that he hatched a plan to carjack Grotheer with his accomplices. Under these circumstances, we do not believe that evidence of this voice mail affected the outcome of the trial, and therefore any error was harmless. See United States v. Adams, 375 F.3d 108, 113 (1st Cir. 2004) ("Even if we found a violation of Rule 403, we would regard any error as harmless because the evidentiary ruling could not have affected the outcome."); see also United States v. Mangual-Santiago, 562 F.3d 411, 426 (1st Cir. 2009).

## IV. Jencks Act Violation

On remand, the district court ordered that the appellant's trial and appellate counsel be furnished with copies of the FD-302 Form that contained alleged "statements" of Lawrence Evans, which purportedly should have been disclosed pursuant to the Jencks Act, 18 U.S.C. § 3500. The district court directed the defendant's counsel to "specify docket entries or trial transcripts relevant to the [Jencks Act] issue." Gonzalez-Melendez identified relevant testimony, but declined to argue the matter because we retained

_____

a new basis for objection is raised for the first time on appeal, the ground is not subject to harmless error review, and may only be reviewed for plain error.").

-13-

appellate jurisdiction over the case. Based on the information before it, the district court concluded that no Jencks Act violation occurred. In response to the appellant's objection to this conclusion, the district court held a hearing to examine this issue in greater detail.

At the hearing, the district court heard testimony from Special Agent Rubén A. Marchand-Morales, the FBI agent who prepared the FD-302 Form, as we had suggested in our remand order. Morales testified that he did not record or transcribe Evans's oral statement. Rather, Morales testified that he took notes on small scraps of paper, on which he relied to create the FD-302 Form. Morales further clarified that Evans neither signed nor adopted either the 302 or the notes. Based on this testimony, the district court reaffirmed its conclusion that the FD-302 form was not a "written statement of a witness," within the meaning of 18 U.S.C. § 3500(e)(1), and further found that the 302 was not a "substantially verbatim recital of an oral statement made by a witness," within the meaning of 18 U.S.C. § 3500(e)(2). See Gonzalez-Melendez I, 570 F.3d at 3-4.

Review of a district court's Jencks Act determination typically is considered to be for abuse of discretion. See United States v. Femia, 57 F.3d 43, 45 (1st Cir. 1995) (citing United States v. Foley, 871 F.2d 235, 239 (1st Cir. 1989)). When a district court's decision is reviewed for abuse of discretion,

-14-

underlying legal conclusions are reviewed de novo and findings of fact for clear error.  See, e.g., United States v. Aviles-Sierra, 531 F.3d 123, 126 (1st Cir. 2008); United States v. Guerrier, 428 F.3d 76, 79 n.1 (1st Cir. 2005).  We will not find clear error unless, after reviewing all of the evidence, we are "left with the definite and firm conviction that a mistake has been committed." United States v. Arbour, 559 F.3d 50, 53 (1st Cir. 2009).

We cannot say that the district court's conclusion is clearly erroneous.  To begin, there are questions as to whether the FD-302 form was a "substantially verbatim recital of an oral statement made by a witness" within the meaning of 18 U.S.C. § 3500(e)(2).  Although the appellant points out that Morales acknowledged that the FD-302 form was a "detailed report" that contained 99% of what Evans told him, Morales specifically denied that the FD-302 was a substantially verbatim recital of Evans's oral statement and instead called it a summary.  Morales's characterization of the FD-302 is buttressed by the manner of transcription he employed when interviewing Evans.  Morales took notes on small scraps of paper, relying on those scraps to compile the FD-302 form.  This somewhat scattered manner of transcription puts into further doubt whether Evans's statement was captured "substantially verbatim."

And it is even more unclear whether the FD-302 form is discoverable under subsection (e)(1) of 18 U.S.C. § 3500.  For the

form to be discoverable under this subsection, Evans would have needed to "adopt" or "approve" the statement he gave to Morales. Although Morales testified that he "repeated some of the points of the interview to [Evans]," there is nothing in the record that suggests that Evans then adopted or approved of these points. Goldberg v. United States, 425 U.S. 94, 110 (1976) (noting, when remanding the case to the district court for a determination under the Jencks Act, that "it will be necessary to determine whether the prosecutors' notes were actually read back to Newman and whether he adopted or approved them.") (emphasis added)); see also United States v. Marrero-Ortiz, 160 F.3d 768, 776 (1st Cir. 1998) ("A written summary of a witness is not a statement unless the evidence shows that the witness adopted the notes, a phenomenon that would occur, for example, if 'the interviewer read the statement back to the witness and . . . the witness approved the statement.'") (quoting United States v. Gonzalez-Sanchez, 825 F.2d 572, 586 (1st Cir. 1987)). Gonzalez-Melendez has not argued that Evans adopted the notes, and, on this record, we cannot say with requisite certainty that the district court erred when finding that the 302 Form fell outside the scope of the Jencks Act. As a result, we affirm the district court's conclusion.[4]

_____

[4]Because we affirm the district court's conclusion that the Form was not discoverable under the Jencks Act, we have no reason to apply the especially rigorous form of harmless error review that is required when Jencks Act material was not disclosed. See Gonzalez-Melendez I, 570 F.3d at 5 (citing Goldberg, 425 U.S. at

-16-

## V. Jury Note

The final trial-related challenge advanced by Gonzalez-Melendez relates to the district court's handling of the jury's first note. This note requested copies of the indictment and the instructions and concluded with the ambiguous phrase "please explain." On appeal, the defendant asserted, and the government conceded, that the district court never informed the parties of this note and its response to it.

Although we would not do so in the ordinary course, we invited the district court to augment the record with respect to the first jury note because a remand was required in any event for a determination of the Jencks Act issue. Gonzalez-Melendez I, 570 F.3d at 3. On remand, the district court explained that its routine practice is to provide the jury with copies of the indictment and instructions, and cited to contemporaneously-produced Minutes of Proceedings, which suggested that the first jury note was discussed with counsel for both sides.

We have previously held that "[a] district court's failure to attempt to inform defense counsel about the existence of a jury note, and further failure to solicit defense council's input regarding any response to such a note, violates Rule 43 of the Federal Rules of Criminal Procedure." Gonzalez-Melendez I, 570 F.3d at 3 (citing United States v. Ofray-Campos, 534 F.3d 1, 17 (1st

111 n.21).

-17-

Cir.), cert. denied, 129 S. Ct. 588 (2008)).  Here, although the record contains contradictory indications, and the district court's handling of the note did not comport with the preferred practice we have articulated for handling notes from the jury, see Ofray-Campos, 534 F.3d at 18 (citing United States v. Maraj, 947 F.2d 520, 525 (1st Cir. 1991)), it appears likely that the defendant was informed of the note, and the district court's response to the note was proper. Cf. Cipes v. Mikasa, Inc., 439 F.3d 52, 56-57 (1st Cir. 2006) (explaining that judicial proceedings enjoy a presumption of regularity and dismissing claim that district court misrepresented contents of jury note) (citing Oulette v. United States, 852 F.2d 371, 374 (1st Cir. 1988))).  Withal, any error the district court may have made with respect to the first jury note was harmless.[5] See Cipes, 439 F.3d at 56 (noting that district court's failure to follow prescribed procedure for handling jury note engenders harmless error review); Maraj, 947 F.2d at 526.

---

[5]We can be sure of the harmlessness of this error because the note, received at the beginning of deliberations, did not suggest that the jury suffered from substantial confusion or needed explanation of any specific topic. Moreover, the jury continued to deliberate and request additional materials and clarification. Indeed, the jury sent the judge two more notes before eventually reaching a verdict. Thus, it is likely that the jury's need for an explanation, and any consequent jury confusion, dissipated before it rendered a verdict. Therefore, the appellant suffered no prejudice.

## VI. Cumulative Error

Before we will affirm the conviction in this case, we must be satisfied that the combination of the asserted errors, none of which individually requires reversal, did not disfigure the proceedings so significantly as to undermine our confidence that the defendant received a fair trial. See United States v. Sepulveda, 15 F.3d 1161, 1195-96 (1st Cir. 1993) ("Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect.") (citations omitted). In considering a claim of cumulative error, we look to the impact of a number of variables, such as the nature and number of the errors, their interrelationship, if any, how the district court dealt with the errors as they arose, the length of the trial, and the strength of the government's case. Id. at 1196.

Here, although the district court allegedly committed several errors with respect to jury selection, its handling of evidentiary objections, and its handling of the jury note, these alleged errors were all relatively benign. Moreover, the alleged errors were generally not related to one another, which tends to lessen our concern that the effect of any error was compounded.

Accordingly, we are satisfied that the appellant's conviction need not be disturbed based on any of the individual errors that he has assigned, and that these errors cumulatively do not compel a different outcome.

### VII. Sentencing Challenge

Having satisfied ourselves that the appellant's conviction is sound, we turn to the sentence. Here, we find no similar comfort. The appellant's primary contention on appeal is that he was denied his opportunity to address the court directly and be heard prior to sentencing. The Rules of Criminal Procedure guarantee this right, see Fed. R. Crim. P. 32(i)(4)(A)(ii),[6] which has long been accorded special importance at common law. See United States v. Behrens, 375 U.S. 162, 165 (1963) (recognizing right of allocution as "ancient in law" and codified in Rule 32); United Sates v. De Alba Pagan, 33 F.3d 125, 129 (1st Cir. 1994). Though such circumstances will be "few and far between," with "doubts resolved in the defendant's favor," where the totality of the circumstances "clearly and convincingly" show that the defendant was afforded the right address the court on any subject of his choosing prior to the imposition of his sentence, a sentence will stand even in the absence of specific compliance with the imperative of Rule 32. Id. (citing Green v. United States, 365 U.S. 301, 304-05 (1961)); see also United States v. Mescual-Cruz, 387 F.3d 1, 11 (1st Cir. 2004).

---

[6]The text of Rule 32 provides in pertinent part that "[b]efore imposing sentence, the court must: . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii).

In the present case, the district court transgressed the specific provision of Rule 32(i)(4)(A)(ii) by not inviting the defendant to speak. The appellant argues that although the transcript reveals that his counsel was permitted to address the court, there is no indication -- let alone the powerful indication required under our precedent -- that he was afforded the functional equivalent of allocution. The government agrees.

Where a defendant has been denied the right to allocute, this error can almost never be regarded as harmless. De Alba Pagan, 33 F.3d at 129-30 ("[W]e cannot dismiss the error as harmless. As early as 1689, the common law acknowledged that a court's failure to invite a defendant to speak before sentencing required reversal . . . . It is settled that a failure to comply with the mandate of Rule 32[(i)(4)(A)(ii)] ordinarily requires vacation of the sentence imposed without a concomitant inquiry into prejudice."). Instead, this error irremediably poisons the sentence and requires that the proceedings be held afresh. See Mescual-Cruz, 387 F.3d at 11. When the sentencing guidelines were still mandatory, some courts held that a failure to permit allocution could be considered harmless where the defendant's sentence was "already as short as it could possibly be under the [Sentencing] Guidelines," United States v. Carper, 24 F.3d 1157, 1162 (9th Cir. 1994). Post-Booker, this suggestion has less force because the defendant's presentation may

convince the court to craft a non-guidelines sentence.  Accordingly,

we remand this case for re-sentencing.[7]

## VIII.  Conclusion

Because we are satisfied that appellant's conviction

suffered from no prejudicial errors, it is affirmed.  But because

Gonzales-Melendez was not afforded his right of allocution, his

sentence is vacated and the matter is remanded to the district court

for further proceedings consistent with this opinion.

---

[7]Because we remand this case for re-sentencing, we need not take up the appellant's remaining sentencing arguments, and note that he is not precluded from seeking a non-guidelines sentence during re-sentencing.  See De Alba Pagan, 33 F.3d at 130 n.6.