JABAR, J., dissenting.
[¶52] I respectfully dissent because I believe that Scott was denied a fair trial due to the cumulative effect of inadmissible and prejudicial testimony of two witnesses and improper remarks made by the prosecutor during closing argument. Although each of these errors may be harmless when viewed in isolation, the errors, when considered in toto, require reversal of the conviction. See State v. Boyd , 401 A.2d 157, 161 (Me. 1979).
A. Inadmissible and Prejudicial Testimony
[¶53] There were two occasions during the trial when inadmissible and prejudicial testimony was presented to the jury.
1. Testimony Regarding Alleged Past Stabbing
[¶54] Scott filed a pretrial motion in limine seeking to exclude testimony regarding two other incidents where Scott allegedly used a knife and stabbed an individual. The court granted the motion. At trial, however, a witness testified on cross-examination *221 that Scott had stabbed her son. Scott did not object to this testimony or request a curative instruction. Further, at the conclusion of the cross-examination, the witness's testimony was discussed during a bench conference, but Scott's attorney did not request a curative instruction or a mistrial. See State v. Sexton , 2017 ME 65, ¶¶ 36-39, 159 A.3d 335 (considering a M.R. Evid. 404 issue under the obvious error standard of review, along with a defendant's similar decision to decline a curative instruction).
[¶55] On appeal, Scott contends that this testimony denied her a fair trial. Because Scott neither objected to this testimony at trial nor moved for a mistrial, we review for obvious error. State v. Patton , 2012 ME 101, ¶ 28, 50 A.3d 544 ; State v. Young , 2000 ME 144, ¶¶ 1, 7, 755 A.2d 547.
[¶56] M.R. Evid. 404 precludes "[e]vidence of a person's character or character trait ... to prove that on a particular occasion the person acted in accordance with the character or trait." M.R. Evid. 404(a)(1). Here, the trial court properly granted Scott's unopposed motion in limine, barring any reference to past incidents involving Scott stabbing another individual. See State v. Mills , 2006 ME 134, ¶ 16, 910 A.2d 1053.
[¶57] The admission of this testimony constitutes plain error in violation of the court's order excluding such evidence and standing alone could have warranted, in the court's discretion, the grant of a mistrial. See State v. Lambert , 528 A.2d 890, 894 (Me. 1987) (Scolnik, J., dissenting) (considering a M.R. Evid. 404 issue and reasoning that "[i]n a one-on-one credibility competition for the jury's acceptance of testimony, I cannot imagine a clearer instance of a seriously prejudicial error tending to produce manifest injustice" (quotation marks omitted)). Nevertheless, this plain error, arguably not prejudicial enough to warrant vacating the conviction, is certainly an important factor in the cumulative-error analysis discussed later. See infra ¶¶ 73-77.
2. Detective's Testimony Asserting that Scott is a "Very Competent and Composed Liar"
[¶58] During the fourth day of the trial, a Maine State Police detective was questioned about whether Scott had taken the knife out of her pocket before or after she was on the ground. The detective testified:
Yes. And I guess ... what I'm saying to you is if you listen to the audio of when I interview her after the walk-through and I say to [Scott], you told me you were outside first and she says adamantly time after time I never said that, I never said that, when I clearly had a record that she did, I knew that [Scott ] was a very competent and composed liar , that she was lying to me in that moment, and I believed that's what was going on here.
Scott's attorney did not object to this testimony.
[¶59] Generally, "[o]ne witness's opinion of another witness's truthfulness is not helpful to the jury when the jury has the opportunity to hear both witnesses." State v. Sweeney , 2004 ME 123, ¶ 11, 861 A.2d 43 ; State v. Steen , 623 A.2d 146, 149 (Me. 1993) ("Determining what credence to give to the various witnesses is a matter within the exclusive province of the jury." (quotation marks omitted)). In this case, the prejudicial effect of the detective's testimony is not limited to infringing on the province of the jury's credibility determination; it is far more prejudicial because this accusation was provided by the detective charged with investigating the stabbing and reinforced later by the prosecutor during his closing argument. See Cordova v. State , 116 Nev. 664, 6 P.3d 481, 485 (2000) ("[T]he detective's opinion on the truthfulness *222 of [defendant's] confession did implicate the ultimate question of guilt or innocence, and we recognize the possibility that jurors may be improperly swayed by the opinion of a witness who is presented as an experienced criminal investigator." (quotation marks omitted)). Here, where there were no eyewitnesses to the incident and Scott was claiming self-defense, the case rested entirely on the credibility of Scott, and a serious prejudicial effect was created when the investigating detective testified that Scott-who would also testify as a witness-was a "very competent and composed liar." See Flynn v. State , 847 P.2d 1073, 1076 (Alaska Ct. App. 1993) ("By allowing this testimony to be admitted, the trial court effectively enabled [the police sergeant] to perform the role of a 'human polygraph.' This court has consistently noted the inappropriateness of such evidence.").
[¶60] Because there was no objection to this testimony, we must review this error using the obvious error standard of review. Patton , 2012 ME 101, ¶ 28, 50 A.3d 544. The detective's statement that Scott is a "very competent and composed liar" constitutes plain error. See Sweeney , 2004 ME 123, ¶ 11, 861 A.2d 43 ; cf. State v. Gaudreau , 139 A.3d 433, 447-49 (R.I. 2016). Although, it may be argued that the error, when viewed in isolation, fails to rise to the level of denying Scott a fair trial, this plain error is another significant factor affecting a cumulative-error analysis. See infra ¶¶ 73-77.
B. Prosecutorial Misconduct
[¶61] During closing arguments, the prosecutor (1) improperly commented on the truthfulness of the defendant and (2) argued facts that were not supported by the evidence. Similar to a recently decided case from the United States Court of Appeals for the Sixth Circuit, "[n]ot one of the prosecutor's statements drew an objection from trial counsel. Therefore, we may remand for a new trial only if plain error occurred." United States v. Acosta , 924 F.3d 288, 298-99 (6th Cir. 2019) (vacating a conviction "because of numerous errors relating to the prosecutor's misconduct at trial that, considered cumulatively, deprived [the defendants] of a fair proceeding.").
1. Prosecutor's Improper Comment on the Veracity of Scott
[¶62] During closing argument, the prosecutor stated: "But you know who else ... lied to the police? Victoria Scott. How many different versions did she give to [the detective] about what happened in that driveway."
[¶63] We have consistently held that a lawyer must not assert a personal opinion regarding the credibility of a witness unless it is an argument grounded in an analysis of the evidence. See State v. Weisbrode , 653 A.2d 411, 415-16 (Me. 1995). Moreover, "this applies with particular force to the statements of prosecutors, and ... [a] prosecutor's statements of personal opinion are particularly troubling when the comments concern a defendant's credibility and the case is a close one." Id. at 416 ; State v. Michaud , 2017 ME 170, ¶ 13, 168 A.3d 802 (concluding that the prosecutor's comment that " 'science doesn't lie' was isolated, was not initially objected to, and did not involve vouching for a particular witness," and stating, "Most important, the prosecutor never argued that [defendant ] was lying " (emphasis added)); see also Acosta , 924 F.3d at 300 (noting that "comments on credibility not coupled with a more detailed analysis of the evidence convey an impression to the jury that they should simply trust the State's judgment that a witness is or is not credible" (alteration omitted) (quotation marks omitted)).
*223 [¶64] In State v. Tripp , 634 A.2d 1318, 1319-21 (Me. 1994), we employed an obvious error analysis-there was no objection to the improper statements made by the prosecutor-and we vacated a conviction of three counts of gross sexual assault based, in part, on a prosecutor's statement during closing argument that created a "clear implication ... that the prosecutor believed that the victim told the truth but defendant lied."[12] We reasoned that "[d]etermining what credence to give to the various witnesses is a matter within the exclusive province of the jury" and because the case was a close one that "turned on the credibility of defendant and the victim" the prosecutor's remark, opining on the defendant and victim's credibility, "constitute[d] serious obvious error and require[d] reversal." Id. at 1320-21 (quotation marks omitted).
[¶65] Here, the prosecutor's statement did not "merely advis[e] the jury that it could conclude that [Scott was not] telling the truth." See Weisbrode, 653 A.2d at 416. Nor did the prosecutor's statement merely create an implication that the prosecutor believed that the defendant was lying. See Tripp, 634 A.2d at 1321. Instead, the prosecutor conclusively stated that Scott lied to a detective-the same detective who had already testified before the same jury that Scott was a "very competent and composed liar." Cf. Gaudreau , 139 A.3d at 449 ("The fact that the jury viewed a videotape of the very detective sitting on the witness stand telling defendant that he was a liar compounded the danger that the jury might have been prejudiced against defendant ." (emphasis added)); see also State v. Smith , 456 A.2d 16, 18 (Me. 1983) ("The impropriety of an assertion by the prosecutor conveying his personal view that the defendant has lied or is guilty, is considered serious enough to require an instruction addressed specifically to the improper assertion."). Standing alone, I believe this constitutes obvious error warranting a reversal. Putting that aside, however, this prosecutorial misconduct is another significant factor to be considered in a cumulative-error analysis. See infra ¶¶ 73-77.
2. Mischaracterized Testimony and Arguing Facts Unsupported by the Evidence
[¶66] In addition to the improper comment on the credibility of Scott, the prosecutor argued facts that were not supported by the evidence and mischaracterized the testimony of a witness.
[¶67] During closing arguments, the State must base "its summation on facts and testimony in evidence and the reasonable inferences that could be drawn therefrom." See State v. Ardolino, 1997 ME 141, ¶ 22, 697 A.2d 73. When considering challenges of prosecutorial misconduct involving comments made during closing argument, we review to determine "whether the prosecutor's comment is fairly based on the facts in evidence." State v. Gould , 2012 ME 60, ¶ 17, 43 A.3d 952 (quotation marks omitted). "[B]ecause the alleged misconduct relates to the prosecutor's misrepresentation of facts outside the trial record, we must also look to the prosecutor's obligations as an advocate and officer of the court when evaluating the prosecutor's conduct." Id.
[¶68] Here, the prosecutor argued that Scott went into a room in the house to get *224 a knife and then she went outside and stabbed the victim in the back of the leg as the victim was walking away from her. Specifically, the prosecutor argued, "Does that tell you that Victoria Scott was so angry after she got shoved down in the driveway that she pulled out the knife, passed that blue bus, and stabbed [the victim] as [the victim] was walking away ?" Moreover, the prosecutor argued, "[The witness] said she went into the bedroom and grabbed something. Did she go in and grab that knife ...?"
[¶69] Although a prosecutor may base a closing argument on reasonable inferences that could be drawn from the evidence, here, there is not a scintilla of evidence in the record that would permit a reasonable inference that Scott went into the bedroom to get her knife and then "followed [the victim] down the driveway and stabbed [the victim as he was walking away]." Neither Scott's testimony, the medical examiner's testimony, nor any other witness's testimony permitted such an inference. In its appellate brief, the State conceded that the prosecutor misspoke when he said that a witness testified that Scott had grabbed something when she ran back into the bedroom.
[¶70] The medical examiner did not render any opinion as to how the knife wounds were inflicted on the victim with regard to the positioning of Scott and the victim. Although he did testify about a "fifth wound" as being different in orientation from the other cluster of wounds, he did not render any testimony or opinion as to what the location of the "fifth wound" meant with relation to Scott and the victim's relative positions at the time of the stabbing.[13] Nonetheless, the prosecutor argued that this "fifth wound" indicated that Scott stabbed the victim as he was walking away.
[¶71] The prosecutor's argument-that Scott went into the bedroom and grabbed her knife and then stabbed the victim as he was walking away-is extremely prejudicial because it is evidence of premeditation, a fact devastating to Scott's claim of self-defense. See State v. Ouellette , 2012 ME 11, ¶¶ 9-10, 37 A.3d 921 (detailing that self-defense is not available to an individual who is the initial aggressor or has an opportunity to retreat). The prosecutor's closing argument presented a narrative to the jury that was not supported by the evidence. Simply put, the prosecutor's narrative was not based on any evidence; it was an unsupported narrative of what happened. See State v. Vigue , 420 A.2d 242, 247 (Me. 1980) ("[T]he prosecutor was, in effect, supplying the jury with additional evidence ....").
[¶72] The use of facts not testified to, concerning such an important issue, should be enough to warrant a reversal, and it certainly is a significant factor when considered with the numerous other errors in a cumulative-error analysis. See infra ¶¶ 73-77.
C. Cumulative-Error Analysis
[¶73] "[A] column of errors may sometimes have a logarithmic effect, producing a total impact greater than the arithmetic sum of its constituent parts." United States v. Sepulveda , 15 F.3d 1161, 1196 (1st Cir. 1993).
In considering a claim of cumulative error, we look to the impact of a number of variables, such as the nature and *225 number of the errors, their interrelationship, if any, how the [trial] court dealt with the errors as they arose, the length of the trial, and the strength of the government's case.
United States v. Gonzalez-Melendez , 594 F.3d 28, 37 (1st Cir. 2010). Although some jurisdictions caution that application of the cumulative-error doctrine should be used sparingly, see , e.g., State v. Richardson , 240 W.Va. 310, 811 S.E.2d 260, 272 n.17 (2018), the present case has a strong foothold in the cumulative-error doctrine, see State v. Dolloff , 2012 ME 130, ¶ 74, 58 A.3d 1032. In this close case, the nature, number, and interrelationship of the errors undermine confidence that Scott received a fair trial. See Acosta , 924 F.3d at 307 ("[T]he evidence supporting the convictions, although sufficient, was far from overwhelming.").
[¶74] The credibility of a defendant in a self-defense case is critically important. In this case, there were no eyewitnesses to the stabbing; Scott was the only one who could describe facts that would substantiate her assertion of self-defense. As a result, Scott's credibility was of paramount importance and the central issue in this trial. As the Sixth Circuit recently stated, "[i]n a case where credibility judgments were almost certainly determinative-because all of the government's evidence of guilt was circumstantial-such a comment may have been highly prejudicial." Acosta , 924 F.3d at 300.
[¶75] Not only was inadmissible and judicially precluded testimony regarding a past stabbing admitted, but Scott was also referred to as a "very competent and composed liar" in front of the jury by the investigating detective-an improper statement that was reinforced by the prosecutor during his closing argument. The interrelationship between the prejudicial testimony of the detective and the closing remarks by the prosecutor is an important factor in determining the cumulative effect of what could otherwise be considered harmless error. See Gonzalez-Melendez , 594 F.3d at 37. The prosecutor's comments compounded the effect of the earlier testimony provided by the detective. See Tripp , 634 A.2d at 1320-21 ; cf. State v. Pabon , 2011 ME 100, ¶¶ 48-49, 28 A.3d 1147 (Silver, J., dissenting). The effect of these improper and prejudicial comments on Scott's credibility cannot be overstated.
[¶76] In addition to the above, the prosecutor's argument as to the sequence of events leading to the stabbing was improper and prejudicial. There is no possible way that the jury could infer from the evidence that Scott went into her bedroom to get her knife and then stabbed the victim in the back of the thigh as the victim was walking away. The prosecution presented a narrative to the jury that was not supported by the evidence in this case.
[¶77] In conclusion, considering the nature of the case and the interrelationship of the testimonial errors and improper prosecutorial remarks, I am unable to conclude that the jury was able to weigh and determine Scott's credibility fairly and independently. See Acosta , 924 F.3d at 306-07 ("The improper remarks were not isolated. In a three-day trial, with evidence presented over two days and closing arguments and deliberations taking place on the third, the ... improper remarks were relatively extensive. Nor were they confined to one portion of the proceeding ." (emphasis added)). The cumulative effect of these plain errors likely had an effect on the outcome of the trial. See United States v. Pereira , 848 F.3d 17, 33 (1st Cir. 2017) ; Boyd , 401 A.2d at 161 ("From a review of the record in its totality, we are unable to say beyond a reasonable doubt that the four errors, when considered cumulatively, were harmless.");
*226 State v. Gervais , 303 A.2d 459, 461-63 (Me. 1973). Standing alone, each of the aforementioned errors could arguably be deemed harmless error, but when all the errors are considered in their totality, it necessitates a conclusion that Scott did not receive a fair trial. Accordingly, we should vacate the conviction.

The relevant portion of the prosecutor's statement in State v. Tripp was as follows: "that nine-year old boy told you the truth . He told you what happened to him. He told you what his father did to him.... [I]t does all come down to [the victim] and [the defendant], because one of them wasn't telling the truth. One of them was lying here to all of us ." 634 A.2d 1318, 1321 (Me. 1994) (alterations and quotation marks omitted).

The only evidence in the record regarding the positioning of Scott and the victim at the time of the stabbing stems from Scott's own testimony and the medical examiner's testimony that it was possible that the cluster of wounds could have been inflicted while the victim was straddling Scott.